Louis G. Bruhn, J.
This is a proceeding under article 78 of the Civil Practice Act to review a decision of the Commissioner of Education in relation to the amount of nonresident academic tuition to be charged by Union Free School District No. 14 of the Town of Rotterdam, Schenectady County (whom I shall refer to as District No. 14) to Central School District No. 3 of the Towns of Rotterdam, Schenectady County and Colonie and Guilderland, Albany County (whom I shall refer to as District No. 3).
It appears that prior to the opening of its 1956 session District No. 14 had announced it would not accept any nonresident pupils and predicated its refusal on the claim that under the existing law it could not receive full reimbursement for the cost of educating such pupils since it was required to use the expenses for the preceding year in making its computation.
District No. 3 thereafter appealed to the Commissioner who, by order dated August 24, 1956, directed District No. 14 to *382 accept the pupils of District No. 3 for the 1956-57 session and reserved the amount of tuition for further consideration.
Coincidentally, the Legislature, apparently aware of the possibilities of inequities in the use of expenses of a preceding year in computing nonresident tuition, enacted chapter 718 of the Laws of 1956 (Education Law, § 3602, subd. 4) which created the so-called “ expenditure check ” or “ budget check ” method of computation.
Such section permitted a receiving district, upon application and approval by the Commissioner, to use the appropriations in the current year’s budget rather than the expenditures of the preceding year.
Such use, however, was subject to an adjustment at the end of the year if the budgetary appropriations had not been fully expended.
As a matter of fact, District No. 14 did apply and was permitted to use current estimated figures in establishing its tuition for 1956-57 and following the completion of such school year an adjustment was made by the Commissioner which resulted in a credit to District No. 3 of $19,046.53.
All concerned now have no direct quarrel with the result arrived at for that school year nor with the manner in which it was reached.
District No. 14 now contends that although application was made in the two subsequent school years, approval was denied by the Commissioner because he contended the district qualified for maximum State aid anyway.
Incidentally, in view of the subsequent developments it would seem to make little difference for this court’s determination whether the Commissioner’s approval was or was not granted.
In spite of the lack of such approval District No. 14 continued to compute nonresident tuition for the school years 1957-58 and 1958-59 on the current basis for those respective years.
In May of 1959 District No. 3 petitioned the Commissioner for an order directing District No. 14 to repay the credit for 1956- 57 of $19,046.53 and to pay a further claimed credit for 1957- 58 of $16,214.94 or a total amount of $35,261.47.
District No. 14 countered for an order directing District No. 3 to pay it $12,085.59 which figure it claimed was the tuition for 1957-58 and 1958-59 less the $19,046.53 credit for the year 1956-57.
By decision No. 6782 dated May 31, 1960 the Commissioner stated, in part: “ Since the school years 1957-58 and 1958-59 are now completed, however, and since final figures on costs, state aid and valuations are now available for both years, there *383 should he very little difficulty in determining what the tuition rates for these years should he. Since sufficient information is not contained in the papers before me for me to determine the exact amounts, these districts should agree between themselves as to the amounts due one another. In so doing, they should take into account the agreed refund due appellant for the school year 1956-57.” (Italics supplied.)
Since the districts failed to agree an application to the Commissioner was made in October of 1960 by District No. 3 for an order directing District No. 14 to pay the refund for 1956-57 and to comply with the Commissioner’s decision of May 31,1960.
District No. 14 thereupon countered and requested an order directing a recomputation on actual figures for the school years 1957-58 and 1958-59.
The Commissioner by decision No. 6898 dated April 28, 1961 in effect directed the application of the so-called ‘1 Seneca Falls formula ” as set forth in Matter of Common School District No. 8, Town of Fayette (70 N. Y. St. Dept. Rep. 69) and Matter of Common School District No. 8, Town of Ulster (72 N. Y. St. Dept. Rep. 123) and computed the tuition for the 1957-58 school year at $65.46 based on total expenditures for the prior year ending June 30,1957 and tuition for the 1958-59 school year at $272.26 based on total expenditures for that prior year ending June 30, 1958.
It should be noted at this point that the use of such formula in that manner arrived at a result which determined the tuition for 1957-58 to be the same as the tuition for 1956-57 since identical figures were used in both computations.
Essentially now it is the review of the Commissioner’s decision of April 28,1961 which is being sought.
The Commissioner contends that by virtue of section 310 of the Education Law his decision is final and not reviewable since it is not arbitrary.
District No. 14 in opposition contends that section 310 of the Education Law does not preclude a review by this court since the Commissioner was arbitrary in using the figures for the preceding years rather than using actual cost figures for the respective years of 1957-58 and 1958-59 which at the time of the Commissioner’s decision were final and available.
Under section 310 of the Education Law the decision of the Commissioner is only final when it can be said it is not purely arbitrary. (Matter of Board of Educ. of City of New York v. Allen, 6 N Y 2d 127, 136.)
In that case at page 136 the court stated: “ If the words of section 310 were to be read literally there could be no court *384 review whatever of the Commissioner’s decisions on appeal, for the statute states that his decision ‘ shall be final and conclusive, and not subject to question or review in any place or court whatever. ’ However, our court has determined that the Legislature did not intend that the words are to so read. Thus, we have said that1 decisions by the Commissioner of Education are final unless purely arbitrary ’. (Matter of Ross v. Wilson, 308 N. Y. 605, 608, emphasis supplied; Matter of Levitch v. Board of Educ., 243 N. Y. 373, 375.) ” (Italics supplied.)
The recent case of Matter of O’Brien v. Commissioner of Educ. (4 N Y 2d 140) cited by the Commissioner is not to the contrary since the court, in that case, at page 145, stated: ‘ ‘ All that we are now holding is that the appeal taken as of right does not lie.”
Therefore, this court is of the opinion that it does have jurisdiction at least to the extent of determining whether the decision of the Commissioner of April 28, 1961 was ‘ ‘ purely arbitrary ”.
A sensible and logical determination of that question would seem to first focus attention on the meaning and application of the “ Seneca Falls formula ” as set forth in the Town of Fayette and Town of Ulster cases (supra).
Basically the invocation of such formula arises in prospective situations where the problem of fixing nonresident tuition is necessary prior to a final determination of actual costs for a current year.
Under those circumstances equity and uniformity suggest employment of established figures of a prior year rather than speculative or estimated figures in a current year.
However, in retrospective situations, equity and uniformity would seem to suggest the use in the application of the formula of the most available fixed and final figures for the year in question.
Such position finds corroboration in' the opinions of the Commissioner afore-mentioned.
For example, in the Town of Fayette case (supra) the Commissioner at pages 69-70, stated: “ Applying the above formula to the cost of instruction in Union Free School District No. 1 of the town of Seneca Falls for the school year 1947-48, which is the last school year for which a complete report is available, it appears that the total cost of instruction of all pupils was $247,089.49.” (Italics supplied.)
Furthermore, in the Town of Ulster case (supra) the Commissioner, at page 124, stated: 11 At this time, however, the completed report for the school year 1950-51 is available and *385 the figures contained in such report will he utilized in reaching the proper tuition charges.” (Italics supplied.)
As a matter of fact, the Commissioner insisted upon the use of 1950-51 figures which he claimed were, at the time of his decision, the last available although the sending district urged that 1949-50 figures should have been used, since they were the last available at the time of the institution of the proceeding.
While in each such case a prospective situation was involved with no fixed figures for the concerned year available, it can hardly do violence to logic to infer from these quoted statements that when final figures are available for a particular year that those fixed figures should be used rather than fixed figures from the preceding year.
Focusing our attention next on the legal question of what conduct constitutes action ‘1 purely arbitrary ’ ’ we find guidance in the case of Matter of Board of Educ. v. Cole (176 Misc. 509) when Justice Bebgak at page 511 stated: “ To say that his action is arbitrary is to say no reasonable person would agree with it.”
Viewing the Commissioner’s decision in the instant factual context in the light of such definition and in the light of the Town of Fayette and Town of Ulster cases, upon which the Commissioner relies, it is the conclusion of this court that the Commissioner’s decision was purely arbitrary.
Any reasonable person, it seems to this court, would find it difficult under these circumstances to agree that figures for 1956- 57 should be used in computing nonresident tuition for 1957- 58 when the figures for the latter school year were ‘ ‘ available ” and even more particularly when the same figures had already been used to establish tuition for 1956-57.
The same, of course, can be said of the school year 1958-59.
Furthermore, a reasonable person could readily agree that if current estimated figures were used in 1956-57 with an adjustment at the end of that completed year, that no injustice would follow from utilizing the completed figures for 1957-58 and 1958-59 after those years were completed.
As further compulsion for the utilization of the completed figures for the respective years in question is the fact that following the conclusion of the 1958-59 school year the sending district no longer availed itself of the facilities of the receiving district, so that the Commissioner’s argument that any increased costs are reflected in the following year’s tuition avails the receiving district naught under these circumstances.
A reasonable person would also find it difficult to exalt form over substance by the Commissioner’s insistence upon the appli *386 cation of the ‘ ‘ Seneca Falls formula ’ ’ in this manner when such application leads to an unjust and inequitable result.
The use of fixed figures of a preceding year in the application of the Seneca Falls formula should only occur when fixed figures for a current year are unavailable.
Such contention has no quarrel with the use of the formula but rather with the figures to be used in its application.
The conclusion reached by this court will in no way disturb the orderly procedure of the educational process any more than it was disturbed in the Town of Fayette and Town of Ulster cases, and for that matter in this case, since the problem involved appears primarily one of accounting rather than education.
Therefore, for the reasons stated, this court concludes that the act of the Commissioner in using the figures which he used in computing tuition rather than using 1957-58 and 1958-59 figures for those years was purely arbitrary.
Under those circumstances, the determinations of the Commissioner are vacated and annulled and the application of the petitioner is granted. Settle order on three days’ notice.