In the Matter of MICHAEL VETERE, Individually and as Parent and Natural Guardian of ANITA VETERE, an Infant, Respondents, v. PATRICIA A. MITCHELL et al., Respondents, and JAMES E. ALLEN, JR., as Commissioner of Education of the State of New York, Appellant.

In the Matter of LEWIS HUMMEL et al., Individually and as Parents and Natural Guardians of SALLY A. HUMMEL et al., Infants, Respondents, v. BOARD OF EDUCATION OF UNION FREE SCHOOL DISTRICT No. 12 OF THE TOWN OF HEMPSTEAD, NEW YORK, Respondent, and JAMES E. ALLEN, JR., as Commissioner of Education of the State of New York, Appellant.

Third Department, July 21, 1964.

Charles A. Brind (John P. Jehu, Elizabeth M. Eastman and George B. Farrington of counsel), for appellant.

Mason L. Hampton, Jr. of counsel (C. William Gaylor and H. Paul King with him on the brief), for petitioners-respondents.

Thomas L. Driscoll for Board of Education of Union Free School District No. 12 of the Town of Hempstead, New York, respondent.

Robert L. Carter and Jawn A. Sandifer (Joan Franklin of counsel), for Patricia A. Mitchell and others, respondents, and National Association for the Advancement of Colored People, amicus curiæ.

HAMM, J. This appeal is from an order and judgment which denied the motions of the respondent-appellant Commissioner of Education to dismiss the petitions as insufficient in law and annulled the determination of the Commissioner complained of in the petitions.

The petitioners in both proceedings are parents of white children affected by the Commissioner's decision. The two petitions are substantially similar; the petitioning parents in both proceedings are represented by the same attorneys. The Board of Education of the school district is a party to the second proceeding and has served an answer.

Union Free School District No. 12 of the Town of Hempstead contains a junior high school and a senior high school. After completion of the requirements of the fifth grade all pupils attend the junior high school. The attendance area for the junior high school and for the senior high school is the entire school district. The district contains also three elementary schools: Woodfield Road School, Davison Avenue School and Lindner Place School. As the result of concentration of Negroes in a specific area Woodfield School has a Negro-to-white ratio of approximately 75%, which is constantly increasing. Each of the other two elementary schools has a Negro pupil enrollment of approximately 14%.

Negro children through their parents appealed to the Commissioner from the refusal of the Board of Education to alter zoning areas for school attendance. An oral argument was held and findings and recommendations were submitted by the Commissioner's Advisory Committee on Human Relations

and Community Tensions. After a special study by the committee of the situation in the school district a further oral argument was held and briefs were filed. On June 17, 1963, the Commissioner rendered his decision. At considerable length he quoted from and summarized the committee's report, quoted a portion of and summarized the statement of policy of the Regents on "Intercultural Relations in Education", accepted the first of four proposals submitted by the committee, and ordered the Board of Education to prepare a program to make the accepted proposal effective on the opening of school in September. We quote the proposal: "Reorganize the attendance areas of the District so that all pupils from kindergarten to grade 3 inclusive, will attend either the Davison Avenue or the Lindner Place elementary school; all pupils in grades 4 or 5 will attend the Woodfield Road School. All pupils in grades 6 to 12 will, of course, attend the Junior and Senior High School as they do now." On August 13, 1963, the Commissioner denied the motion of the Board of Education to reopen his decision and order. As appears from the amended petition of Michael Vetere the Board of Education did in fact adopt, but only partly, the Commissioner's plan and, subsequent to the commencement of this proceeding, the Commissioner rejected the proposed plan of the Board of Education. So it is the Commissioner's directive which is in issue.

The petitioners rely on section 3201 of the Education Law, which provides: "No person shall be refused admission into or be excluded from any public school in the state of New York on account of race, creed, color or national origin." The Commissioner required that all pupils in grades 4 and 5 should attend the Woodfield School. This is no different than high school pupils' attendance at the junior or senior high schools; the geographical attendance areas for the high schools and the Woodfield School are the same, consisting of the entire school district. The Commissioner's direction to the board was also to "Reorganize the attendance areas of the District so that all pupils from kindergarten to grade 3 inclusive, will attend either the Davison Avenue or the Lindner Place elementary school". When the attendance zones are so reorganized each pupil will attend the school in his attendance area and no child will be refused admission to any school in his attendance area and accommodating his respective grade. If it be argued that children are refused admission to a school because there are another or other elementary schools in their attendance area although not accommodating their respective grades, then section 3201 becomes a segregation statute mandating con-

tinuation in schools of racial imbalance and making *de jure* that which is now merely *de facto* (cf. *Matter of Balaban* v. *Rubin,* 20 A D 2d 438, 448, affd. 14 N Y 2d 193). Moreover, when attendance zones ultimately are established by the board for the Davison Avenue and Lindner Place Schools, any person then considering the fixation of those boundaries to have been accomplished contrary to proper consideration of the factors necessarily and relevantly involved may appeal to the Commissioner and, if the decision on appeal is unfavorable, can review the Commissioner's decision. We find no violation of section 3201 of the Education Law.

As to the allegation that the Commissioner's decision was arbitrary, capricious and unreasonable it has been held that in a proper case efforts may be made to correct racial imbalance (*Matter of Balaban* v. *Rubin,* 14 N Y 2d 193, *supra*). The court at Special Term summarized the Commissioner's position, saying (41 Misc 2d 200, 206):

" Upon these applications, these facts are undisputed; racial imbalance exists in the three neighborhood schools involved; such racial imbalance does not result from law but rather from incidence of residence; and there has been nothing improper in the drawing of lines for attendance zones.

" The contention of the Commissioner, however, is that racial imbalance is harmful to education; and for that reason, and that reason alone, he has made the order under attack in these proceedings."

The report of the Commissioner's Advisory Committee, as it appears in the Commissioner's decisions which are annexed to the petitions, provides support in the record for the Commissioner's determination. On application of the conventional test we find the Commissioner's decision to be neither arbitrary nor capricious. Where there is found to be a rational basis for the administrative determination the judicial function is exhausted and the administrative agency, not the court, is the final arbiter. The court cannot substitute some other judgment for the judgment of the Commissioner that correction of racial imbalance is an educational aid to a minority group in attaining the skills and level of education which others have had for generations and that compulsory education should be designed for the greatest good of all.

We therefore examine the petitions to determine if there are any allegations of fact the resolution of which in the petitioners' favor would leave no rational basis for the administrative decision (*Matter of O'Brien* v. *Commissioner of Educ.,*

3 A D 2d 321, 325, app. dsmd. 4 N Y 2d 140). CPLR 3013 provides: "Statements in a pleading shall be sufficiently particular to give the court and parties notice of the transactions, occurrences, or series of transactions or occurrences, intended to be proved and the material elements of each cause of action or defense." In addition to allegations of violations of laws and of constitutional provisions the petitioners allege that there will be required " the expenditure of considerable sums of public monies * * * to provide additional transportation equipment, the hiring of additional personnel, and the purchase of and installation of additional traffic signal devices " and that they and other citizens and taxpayers " will be subjected to considerable wastage of public assets, social upheaval and anguish within the community in question ". The expenditure of " considerable sums of public monies " for the purposes stated would not require a reasonable man to find the Commissioner's decision arbitrary. Moreover " considerable " is conclusory, indefinite and lacking in significance. The allegation of " wastage of public assets " is merely a statement of the petitioners' opinion; it is apparent they regard as wastage any expenditure in implementation of the Commissioner's decision, an opinion which they are free to entertain but which would not indicate that the Commissioner was arbitrary. As to " social upheaval " the Commissioner may not be said to be arbitrary in rejecting demagogues of any color who incite to hatred and violence. As to " anguish " the Commissioner's decision touches off a strong emotional negative reaction in persons of contrary views but that does not make his decision arbitrary. Finally it is alleged in the Vetere petition as unamended that on August 16, 1963, the Mayor of the Village of Malverne announced " that the sum of $20,000.00 had been set aside by the Village to acquire traffic signals and similar equipment, by way of implementing the plan to be adopted by the Board of Education." Proof that the Mayor made such an announcement would not result in there being left no rational basis for the Commissioner's decision. Moreover the announcement was issued contemporaneously with a press release issued by the Board of Education publicizing a complicated proposal for enrollment of children in contravention of geographical attendance areas and that plan, as will later appear, was disapproved by the Commissioner. Moreover, as we have previously mentioned, the geographical area for attendance at the Woodfield School is the school district, the same as for the junior and senior high schools, and, until attendance zones

have been established for the Davison Avenue and Lindner Place elementary schools, there is as to these schools no zoning in existence to complain of. We conclude that the petitions fail to state facts sufficient to constitute causes of action.

Finally we are required to advert to the pleadings to refer to technicalities which we propose to ignore for the reasons about to be stated. There is annexed to the original petition of Michael Vetere and to the Hummel and Abrams petition a press release dated August 16, 1963, of the Board of Education stating its intent to file with the Commissioner the following plan: " Grade 4 and Grade 5 pupils will attend Woodfield Road School, except for one balanced class of each grade at Davison Avenue and Lindner Place Schools. Kindergarten pupils will remain in the neighborhood schools. Pupils in Grade 1, 2 and 3 will attend either Lindner Place or Davison Avenue School, except for one class of each grade at Woodfield Road School." The petitioners' orders to show cause were returnable September 13, 1963. However, the petitioner Vetere, in response to a motion for leave to intervene by the National Association for the Advancement of Colored People, cross-moved by notice of motion returnable September 13, 1963, to add certain parties and also to amend his petition to state: " On or about the 16th day of August, 1963, the said Board of Education, acting in its official capacity as such and acting by virtue of the aforesaid decisions and orders of the Commissioner, adopted in part the racial placement plan decreed by the Commissioner. Attached hereto and incorporated herein by reference as Exhibit ' C ' is a press release of August 16, 1963, whereby the said Board of Education described its proposed plan."

" Upon information and belief, subsequent to the commencement of this proceeding the said Commissioner of Education rejected and disallowed such plan of the Board of Education."

The proposed amended petition is printed in the record and, pursuant to certification of the record on appeal subscribed by the petitioners' attorneys, the record contains also the decision of the Commissioner dated September 5, 1963, wherein he rejected the proposed plan of the Board of Education. The order and judgment of the court granted the petitioner Vetere's motion to add parties but is silent as to the amendment sought by the cross motion.

The court stated at Special Term (pp. 203, 206): " The Board's plan, following the aforesaid direction, required that 224 pupils from Woodfield Road School, selected on the basis that they are of the Negro race, be transferred to the Davison Avenue and Linden Place Schools; 92 pupils from Davison

Avenue School, selected on the basis that they are not of the Negro race, be transferred to the Woodfield Road School; and 82 pupils from Linden Place School, selected on the basis that they are not of the Negro race, be transferred to Woodfield Road School. * * *

"When a number or percentage of pupils of whatever race, color or creed, normally entitled and indeed required to attend a public school in their attendance zone, are denied admission, and, contrary to their wishes, are directed to attend a school in a different zone in order to eliminate racial imbalance, is this anything other than denial of admission on the ground of race or color, contrary to long-established law?"

This is contradicted by the record, although it is so alleged in the Vetere petition *before* the proposed amendment and in the Hummel petition. As stated in the proposed amended Vetere petition the board's plan was rejected and the Commissioner's plan entailed centralization of grades 4 and 5 in the Woodfield School and reorganization of attendance areas so that children from kindergarten to third grade inclusive would attend either the Davison or Lindner School. The Commissioner's plan did not, as did the board's rejected plan, require children to attend a school not located in their attendance area.

This appeal was argued on the merits. The entire argument, both in the petitioners' brief and in the respondent Board of Education's brief, is directed exclusively to the Commissioner's decision. As a matter of fact the petitioners at page 33 of their brief state that the only plan before the court was the Commissioner's direction to the board to "reorganize the attendance areas of the District so that all pupils from the kindergarten to grade 3 inclusive will attend either the Davison Avenue or the Lindner Place elementary school; all pupils in grades 4 or 5 will attend the Woodfield Road School." And they add "it is pointless to speculate as to what the court might have decided with respect to some other plan." And there was at no time urged in briefs or arguments that the board's rejected plan was an issue because the Hummel petition had not been amended to conform to the proposed amendment of the Vetere petition, which alleged and confirmed the rejection of the board's plan or that the proposed amended petition should not be considered. The issue presented to us was solely the validity of the Commissioner's decision. We have mentioned that the same attorneys represent the petitioners in both proceedings. We therefore ignore the technical issues since they are not raised and treat the Commissioner's motions to dismiss as directed to the Vetere petition as proposedly amended and

to the Hummel petition as if amended to conform to the proposed amendment of the Vetere petition and to conform to the undisputed and indisputable facts as they appear in the record.

The order and judgment should be modified, on the law and the facts, by reversing so much thereof that annulled a determination of the appellant Commissioner of Education and that denied the appellant's motion to dismiss the petitions, and, as so modified, affirmed, without costs.

HERLIHY, J. P., REYNOLDS, TAYLOR and AULISI, JJ., concur.

Order and judgment modified, on the law and the facts, by reversing so much thereof that annulled a determination of the appellant Commissioner of Education and that denied the appellant's motion to dismiss the petitions, and, as so modified, affirmed, without costs.