In the Matter of CHRIS STRIPPOLI, Individually and as President of No. 30 School District Association, Suing on Behalf of Himself and All Other Persons Similarly Situated, et al., Respondents, v. ROBERT R. BICKAL et al., Constituting the Board of Education of the City of Rochester, et al., Appellants.

Fourth Department, June 25, 1964.

*Arthur B. Curran, Jr., Corporation Counsel (John R. Garrity* of counsel), for appellants.

*William L. Clay* for respondents.

WILLIAMS, P. J. The petitioners in this action are parents of children enrolled in School No. 30 in the City of Rochester and are the president and treasurer of the " No. 30 School District Association ". They seek to enjoin the transfer to this school of 118 pupils comprising the entire fifth and sixth-grade classes of School No. 3. The court below granted the relief requested, annulled the determination of the Board of Education effectuating the transfer and, the transfer having been previously accomplished, directed the return of the students to School No. 3. This order should be reversed.

The evidence clearly established that the facilities at School No. 3, the student population of which was 95.3% Negro, were badly overtaxed. The most serious overcrowding of classrooms was found at the fifth and sixth-grade levels, where the class size ranged from 29 to 37 students as contrasted with a city-wide average of 28.4 students and a recommended size of 26. In addition, the building itself could not accommodate all of the classes. Six classes were being held in transportable classrooms, temporary structures installed upon the school playground. In prior years space had been rented in nearby churches at a cost of $1,250 per month.

In comparison, School No. 30, the enrollment of which was 100% white, was a new school with seven vacant classrooms. This school was located approximately two and one-half miles from School No. 3, and the transfer entailed transporting the students by bus. However, 90% of the transportation cost would be borne by the State.

Thus, on November 21, 1963 the Board of Education directed the Superintendent of Schools to transfer the fifth and sixth grades from School No. 3 to School No. 30 " as soon as all necessary arrangements can be made ". The transfer was carried out on January 13, 1964.

While the transfer involved the fifth and sixth-grade classes of School No. 3 in their entirety and the students were accompanied by their teachers, the classes were not kept intact in the new location. Rather, the students from the two schools were integrated by reassigning some of the students from both schools to new teachers. The Superintendent of Schools testified that the criteria for making the assignments were the pupils' reading-achievement level, their score on standard mental-achievement tests, and the exact spot which the students had reached in their reading texts. In addition, the students' records and the judgment of the teachers were considered. The actual class assignments were made by the Administrative Director of the Elementary Schools.

In attempting to meet their burden of demonstrating the arbitrariness and unreasonableness of the transfer in issue, the petitioners relied primarily upon the testimony of fifth and sixth-grade students of School No. 30, many of whom had not attended classes since the transfer in protest against the integration of these classes. Obviously these students could not be expected to have any knowledge of the criteria upon which the class assignments were based. The testimony of their parents, that the classrooms in School No. 3 which had been vacated only days before remained empty, was equally unconvincing in the face of the testimony of the Superintendent of Schools that there would be a regrouping of some of the remaining grades in School No. 3 when additional teachers could be obtained.

On the basis of this record we are unable to conclude that the transfer and integration of these students were arbitrary, capricious or unreasonable acts on the part of the Board of Education and the Superintendent of Schools. There is no doubt in our minds that a substantial factor influencing the decision was the desire to reduce to some extent the racial imbalance existing in the public schools. This is apparent despite the insistence of the Superintendent of Schools that the students were not integrated but were regrouped. In fact, his insistence during cross-examination upon avoiding certain specific words and expressions reached the point of absurdity. Nevertheless, a determination of the Board of Education which is otherwise lawful and reasonable does not become unlawful

merely because the factor of racial balance is accorded relevance. (*Matter of Balaban* v. *Rubin,* 14 N Y 2d 193.) Indeed, had these classes been transferred without integrating them with the classes of white students already attending this school, there was at least a possibility that such action might have provoked an attack as constituting a positive act on the part of the Board of Education fostering a racially segregated school. (See, e.g., *McNeese* v. *Board of Educ.,* 373 U. S. 668.)

Petitioners rely heavily upon *Bell* v. *School City of Gary* (213 F. Supp. 819, affd. 324 F. 2d 209, cert. den. 377 U. S. 924) and *Matter of Vetere* v. *Allen* (41 Misc 2d 200). These cases merely hold that attendance zones which are otherwise honestly and conscientiously delineated with no deliberate intention or purpose of segregating races need not be abandoned. This is a vastly different issue from that presently before us. We are here confronted with no claim that by reason of the action taken any student, Negro or white, has been excluded from any school facilities which would otherwise be available to him but for his color. The only question before us is whether, by means of a plan of action which is otherwise reasonable and lawful, the schools may also attempt to correct racial imbalance and this issue has already been resolved by our highest court (*Matter of Balaban* v. *Rubin, supra*).

In view of our determination, a detailed discussion of the other objections raised by the appellants is unnecessary. The standing of these petitioners to invoke judicial review is at least questionable, as they make no claim that their children have been excluded from School No. 30 or any other school in violation of section 3201 of the Education Law. Indeed, they have demonstrated no legal harm resulting to them as a consequence of the action of the Board of Education. If the complaint of these petitioners is that their children must now attend an integrated school, we call attention to *Brown* v. *Board of Educ.* (347 U. S. 483), decided over a decade ago by the United States Supreme Court.

We have treated this proceeding as being in the nature of an article 78 proceeding, as did the Trial Justice, although it is difficult to ascertain from the petition just what form of relief is requested. Under the liberal provisions of the new Civil Practice Law and Rules, a proceeding will not be dismissed solely because it is not brought in proper form. (CPLR 103, subd. [c]; 3017, subd. [a]; *Matter of Nowak* v. *Wereszynski,* 21 A D 2d 431; 1 Weinstein-Korn-Miller, N. Y. Civ. Prac., par. 401.03.) That a proceeding under article 78 may be utilized to obtain review of a Board of Education's action when chal-

lenged upon constitutional grounds was recently confirmed in the *Balaban* decision.

These procedural questions and the right or standing of petitioners to bring this proceeding were mentioned but not stressed on appellants' argument. In fact, it was the position of appellants that it would be desirable to have the court determine the merits, and we have decided to do so.

As we have stated, the order should be reversed and the acts of the Board of Education and Superintendent of Schools confirmed.

BASTOW, HENRY, NOONAN and DEL VECCHIO, JJ., concur.

Order unanimously reversed, without costs of this appeal to either party and petition dismissed.