**Carole Heller WEITZMAN, as assignee of Saul Weitzman, Plaintiff–Appellee,**

v.

**Sidney STEIN, Albert Feiffer and Norman Rubinson, Defendants,**

v.

**Beverly STEIN, Respondent–Appellant.**

No. 800, Docket 89–7861.

United States Court of Appeals, Second Circuit.

Argued Jan. 30, 1990.

Decided March 1, 1990.

Louis Venezia, New York City (Venezia & Haber, on the brief), for plaintiff-appellee.

Arthur Halsey Rice, Miami, Fla. (Rice & Reiser, on the brief), for respondent-appellant.

Before OAKES, Chief Judge, and KEARSE and FLETCHER *, Circuit Judges.

KEARSE, Circuit Judge:

In this action, which dates back to 1970 and was perhaps presciently described by a district court judge several years ago as "interminable," respondent Beverly Stein appeals from an order of the United States District Court for the Southern District of New York, David N. Edelstein, *Judge*, freezing her assets except for a $2,000 per month living allowance. On appeal, she contends principally (1) that the district court did not have personal jurisdiction over her, (2) that the plaintiff had not made a showing sufficient to warrant injunctive relief, and (3) that the court failed to make

findings and follow proper procedures prior to entering the injunction. For the reasons below, we conclude that the injunction was improperly entered, and we vacate and remand for further proceedings.

## I. BACKGROUND

In 1978, a judgment was entered in this action after a trial before Lloyd F. MacMahon, *Judge*, in favor of Saul Weitzman against defendants Sidney Stein ("Sidney") and others, in the amount of $89,703.03, plus interest and costs. Saul Weitzman assigned the judgment to Carole Heller Weitzman ("Weitzman"). Respondent Beverly Stein ("Beverly"), Sidney's wife, was not a party to the action. The present appeal emanates from Weitzman's continuing efforts to enforce the judgment.

Supplemental proceedings following the 1978 judgment resulted in the district court's declaring that Sidney was the alter ego of two corporations, F.I.F. Consultants, Inc., and Investment Bancshares, Inc., and ordering Sidney to account for and turn over to the court all assets of the two corporations, as well as all other assets in his possession. Memorandum of Judge MacMahon dated May 20, 1986. Sidney failed to comply with this order and alleged that he had given his assets to Beverly. In 1987, after the case had been reassigned to Judge Edelstein, an amended judgment was entered in the sum of $442,729.33, including interest, costs, and attorneys' fees.

In April 1988, Weitzman sought an order pursuant to, *inter alia*, § 5225(b) of the New York Civil Practice Law and Rules ("CPLR") (McKinney 1978), vacating Sidney's conveyances of assets to Beverly and compelling Beverly to turn those assets over to Weitzman. The motion labeled Beverly a "respondent" in the action. The court ordered Beverly to attend a hearing in the district court on April 11, 1988, at which she would be required to show cause why the conveyances to her were not fraudulent and void and why she should

* Honorable Betty B. Fletcher, United States Court of Appeals for the Ninth Circuit, sitting by desig-

nation.

not be compelled to disgorge those assets. Order To Show Cause of Judge Edelstein dated April 4, 1988.

Above the caption, the Order To Show Cause bore the following legend:

TO BEVERLY STEIN

WARNING

THE FAILURE OF BEVERLY STEIN TO APPEAR IN COURT MAY RESULT IN HER IMMEDIATE ARREST AND IMPRISONMENT

In the text of the Order To Show Cause, it was

ORDERED that in the event that the respondent BEVERLY STEIN fails to appear at the time and place aforementioned, this Court shall issue an Order for the immediate arrest of the respondent BEVERLY STEIN; and ...

ORDERED that the respondent BEVERLY STEIN is hereby restrained from transferring the assets of F.I.F. Consultants, Inc. and Investment Bancshares, Inc. out of her possession, custody or control....

In opposition to the Order To Show Cause, Beverly submitted affidavits by Sidney. Sidney stated, *inter alia*, that Beverly was a resident of Florida, not New York; that she had been a Florida resident for some 30 years; that she had not conducted or transacted business "personally" in New York; and that she had visited New York only a handful of times in the past 20 years. He argued that "no facts have been set forth showing any jurisdictional basis for compelling Beverly Stein to travel from Florida to New York and to submit herself to the jurisdiction of this Court."

In two reply affirmations, Weitzman asserted that though Beverly perhaps had not transacted business in New York " 'personally,' " she was nonetheless subject to the court's long-arm jurisdiction pursuant to New York CPLR § 302(a)(1) (McKinney Supp.1990) ("court may exercise personal jurisdiction over any nondomiciliary ... who in person or through an agent ... transacts any business within the state"), because Sidney had transacted business in New York for Beverly as her agent. Weitzman quoted Sidney's deposition testimony that he had signed papers in New York between October 9, 1986, and April 23, 1987, as agent for his wife or for her corporations, and that he had traveled to New York to take care of Beverly's business.

In an Order dated August 24, 1988 ("August 1988 Jurisdiction Order"), the district court tentatively rejected Beverly's jurisdictional arguments, concluding that "it appears that Beverly Stein is subject to the jurisdiction of this court." *Id.* at 4. The court found, *inter alia*, that Weitzman had made a prima facie showing that Sidney had acted as an agent in New York for Beverly in her personal capacity. It stated that at that juncture of the proceedings, a prima facie showing of jurisdiction sufficed and that "[c]oncurrently with the hearing on the application made pursuant to CPLR § 5225(b) [to have assets of Beverly turned over to Weitzman], this court shall conduct a full evidentiary hearing on the subject of jurisdiction." August 1988 Jurisdiction Order at 2.

Eventually, the parties submitted papers in support of their respective positions on the merits of Weitzman's § 5225(b) motion. In May 1989, following the last submission, the district court ordered Beverly to appear before the court on July 11, 1989, for her deposition.

On July 17, 1989, immediately after the deposition had been completed, Weitzman made an oral application to the district court for "a discovery order" requiring Beverly to compile information for Weitzman and to remain in New York while she did so. Weitzman's attorney gave a lengthy description of Beverly's deposition testimony; Beverly's attorney argued, *inter alia*, that the description mischaracterized the testimony. There was no deposition transcript.

Near the end of the hearing, the district court stated that Weitzman's application for the proposed discovery should be made by written motion and that "[i]n the meantime, while we're waiting for these papers

and my decision, I want a preservation order that the status quo will be retained." (July 17, 1989 Hearing Transcript at 50.) Accordingly, the court admonished Beverly that "under no circumstances for whatever reason ... are you to touch these assets, move them, transfer them, employ them, use them, they are to remain intact." (*Id.* at 53.)

When Beverly's attorney stated that he hoped this order would not be interpreted to prevent Beverly from paying for such items as groceries or the hotel expense she was incurring as a result of having to be in New York for her deposition, the court conducted the following interrogation:

THE COURT: How much money do you need for your expenses?

MRS. STEIN: I never thought about it. I don't know.

THE COURT: Well, you see an answer of this sort absolutely strikes me with incredibility. How much money are you using a week, a month? How much money·are you using for rent or maintenance, food? What are you using 100, 200? What are you doing? How much money are you drawing?

Your lawyer says you are drawing from a bank account. Well, don't tell me you don't know what you are drawing.

MRS. STEIN: Well, I have to pay everything.

THE COURT: How much is that?

MRS. STEIN: I can't answer that question.

. . . .

THE COURT: How much money do you have in [your] bank [account]?

MRS. STEIN: I don't know, there was maybe—

THE COURT: You don't know?

[MRS. STEIN]: I don't know. I'm sorry. I'm sorry. You know, you have got me all—

. . . .

THE COURT: What is the sum total that you have?

MRS. STEIN: Judge Edelstein, I would have to sit down and think about that. I can't answer your question right now.

. . . .

THE COURT: What were your expenses last month? How much money did you draw?

MRS. STEIN: More than 500. More than 500.

THE COURT: 500 a month[,] a week?

MRS. STEIN: Please, I cannot answer those questions. I don't know the answers to them.

THE COURT: I reject this answer out of complete nonsense.

. . . .

MRS. STEIN: I'm sorry, I really am sorry.

THE COURT: Well, you should be. . . .

. . . .

. . . . I believe you are· lying.

I am finished, I have given this person every opportunity to come forward.

(*Id.* at 54–59.)

The court modified its original order to provide that Beverly would be allowed to draw $2,000 per month for her expenses. The court stated that if Beverly violated the order it would hold her in contempt. It told her that she could return to Florida if she wished, but that if she did not return to New York when asked to appear in this action, the court would send the marshals to arrest her. ·

Weitzman had not moved for an order freezing Beverly's assets, and whatever papers were served on Beverly prior to the July 17 hearing did not advert to the possibility of a freeze order. Nor did Weitzman ask for such an order orally at the hearing or speak in support of it.

On July 24, 1989, the court entered an order formalizing the oral injunction issued at the July 17 hearing. The order ("July 24, 1989 Injunction") stated, in pertinent part, as follows:

Upon the argument heard by this Court and inquiry by this Court of Beverly Stein on July 17, 1989, it is hereby

ORDERED that the respondent, BEVERLY STEIN is hereby restrained from encumbering, transferring, selling, moving, relocating, replacing, assigning or in any other way disposing of any assets in her possession, custody or control until the further Order of this Court, except

that said respondent shall be permitted to withdraw the sum of two thousand ($2,000.00) dollars per month from her personal account.... Respondent may make application to increase said sum if it is necessary to withdraw any additional money in any given month....

This appeal followed.

## II. DISCUSSION

On appeal, Beverly contends (1) that the proceedings were improperly started against her; (2) that the district court lacks jurisdiction over her; (3) that even if a prima facie showing of personal jurisdiction has been made, a mere prima facie showing is not sufficient to support the issuance of an injunction; and (4) that the injunctive order was procedurally defective. The first two contentions are before us only indirectly, for neither the Order To Show Cause nor the August 1988 Jurisdiction Order is a final order appealable under 28 U.S.C. § 1291 (1982) or an injunctive order appealable under *id.* § 1292(a). The July 24, 1989 Injunction, however, is plainly appealable under § 1292(a), and we find merit in Beverly's third and fourth contentions.

### A. *Procedural Requirements for a Preliminary Injunction*

In challenging the procedures followed by the district court in entering its July 24, 1989 Injunction, Beverly contends that the injunction was invalid for, *inter alia*, lack of notice and the failure of the district court to make any findings as to irreparable harm or likely success on the merits. We agree.

■ Rule 65 of the Federal Rules of Civil Procedure provides that "[n]o preliminary injunction shall be issued without notice to the adverse party." Fed.R.Civ.P. 65(a). The purpose of this requirement is to give the opposing party a "fair opportunity to oppose the motion for a preliminary injunction," 7–Pt. 2 *Moore's Federal Practice* ¶ 65.04[3], at 65–81 (2d ed.1989), and the court must allow that party sufficient time to marshal his evidence and present his arguments against the issuance of the

injunction, *see* 11 C. Wright & A. Miller, *Federal Practice and Procedure* § 2949, at 468 (1973). Even if labelled merely a "preservation order," an order requiring a party, during the pendency of the litigation, to "hold and retain" assets within his control is an injunction implicating due process concerns. *See SEC v. Levine,* 881 F.2d 1165, 1177 (2d Cir.1989); *United States v. Moya–Gomez,* 860 F.2d 706, 725–26 (7th Cir.1988), *cert. denied,* —— U.S. ——, 109 S.Ct. 3221, 106 L.Ed.2d 571 (1989). Such an order cannot properly be entered without notice.

■ The matter of the notice requirement normally arises when the preliminary injunction has been entered at the instance of a party, and we note, in passing, a dearth of authority as to whether the district court even has the power to enter an injunction of this type on its own motion. Though the court has the power under the All Writs Act, 28 U.S.C. § 1651(a) (1982), to enjoin a party sua sponte from making repeated frivolous and vexatious filings, *see, e.g., In re Hartford Textile Corp.,* 613 F.2d 388 (2d Cir.1979) (per curiam), *cert. denied,* 447 U.S. 907, 100 S.Ct. 2991, 64 L.Ed.2d 856 (1980), we have found no case in which a court has been held to have authority to enter sua sponte a freeze order. Given the extraordinary nature of such an order, we question the court's power to enter it absent a showing by the favored party of extraordinary need. In any event, assuming, arguendo, that the district court has the power to enter an injunction of this type sua sponte, the notice requirement of Rule 65(a) is fully applicable. *See, e.g., In re Hartford Textile Corp.,* 613 F.2d at 390. The court may not properly enter a preliminary injunction sua sponte without notice.

■ The importance of the notice requirement is evident in the present case. Beverly had been deposed with respect to issues of personal jurisdiction and transfers of assets to her by Sidney. Weitzman sought the July 17 hearing in aid of an application for an order requiring Beverly to compile additional information. The record discloses that Beverly had no fore-

warning that the court might freeze her assets, and when the court began to question her as to how much money she needed to live on, she was unable to answer. Unfortunately, rather than giving her an opportunity to review her records and make an informed response, the court simply accused her of lying. Yet without any notice that there might be a freeze of her assets, there is little reason to disbelieve Beverly's answer that she did not know how much money she needed to live on—especially in light of the fact that she was incurring extra expense in being in New York and in traveling between New York and Florida in response to the court's orders and threats of arrest. In the absence of notice, the injunction was improperly entered.

■■ Nor did the district court comply with other procedural prerequisites to the issuance of a preliminary injunction. In order to obtain a preliminary injunction in this Circuit, the moving party must establish, *inter alia,* that without such relief he is likely to suffer irreparable harm. *See, e.g., Sperry International Trade, Inc. v. Government of Israel,* 670 F.2d 8, 11 (2d Cir.1982); *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.,* 596 F.2d 70, 72 (2d Cir.1979) (per curiam). Fed.R.Civ.P. 52(a) provides, in pertinent part, that "in granting or refusing interlocutory injunctions the court shall ... set forth the findings of fact and conclusions of law which constitute the grounds of its action." *See also* Fed.R.Civ.P. 65(d) ("Every order granting an injunction and every restraining order shall set forth the reasons for its issuance....").

■ A principal purpose of this requirement is to permit the appellate court to review the decision. *Mayo v. Lakeland Highlands Canning Co.,* 309 U.S. 310, 316, 60 S.Ct. 517, 520, 84 L.Ed. 774 (1940) ("It is of the highest importance to a proper review of the action of a court in granting or refusing a preliminary injunction that there should be fair compliance with Rule 52(a) of the Rules of Civil Procedure."). Although we may proceed with a review despite the district court's inadequate findings if we can " 'discern enough solid facts

from the record to enable [us] to render a decision,'" *Canadian Transport Co. v. Irving Trust Co.,* 548 F.2d 53, 55 (2d Cir. 1977) (per curiam) (quoting *English v. Town of Huntington,* 448 F.2d 319, 321 (2d Cir.1971)), we will vacate the order if the findings and the record are insufficient to enable us to be sure of the basis of the decision, *see, e.g., Badgley v. Santacroce,* 815 F.2d 888 (2d Cir.1987) (per curiam) (remanding for findings as to justification for modifying consent decree); *Fuchstadt v. United States,* 434 F.2d 367, 369–70 (2d Cir.1970) (remanding for findings as to plaintiff's damages in negligence action); 9 C. Wright & A. Miller, *Federal Practice and Procedure* § 2577, at 697 (1971); *id.* at 188–90 (Supp.1989).

■ In the present case, the district court, aside from accusing Beverly of lying about her inability to say how much her living expenses were, made no findings whatever. Neither at the hearing nor in the July 24, 1989 Injunction was there any finding as to likely irreparable injury to Weitzman in the absence of a freeze order, or as to the likelihood of Weitzman's success on the merits of her claim that Sidney had fraudulently transferred assets to Beverly, or as to the need for this unlimited freeze order extending to all of Beverly's assets and not just to assets allegedly transferred to her by Sidney or to assets derived from such transfers, or as to any evidentiary fact pertinent to any of those issues. Nor did the court even mention the standard for the granting of a preliminary injunction. Thus, we are unable to tell what standard the court was using and what facts it found to warrant that extraordinary, and unsolicited, relief.

Accordingly, the injunction must be vacated because the district court did not state any findings of fact or conclusions of law that could support it.

### B. *Personal Jurisdiction*

■ Finally, on an even more fundamental level, the injunction was improperly entered because it was not clearly established that the court had jurisdiction over Beverly. *See Visual Sciences, Inc. v. Integrated*

*Communications, Inc.*, 660 F.2d 56, 59 (2d Cir.1981). "The district court has no power to grant an ... injunction against a party over whom it has not acquired valid jurisdiction." 7–Pt. 2 *Moore's Federal Practice* ¶ 65.03[3], at 65–28 (2d ed.1989) (footnotes omitted); *see id.* ¶ 65.04[3], at 65–81 ("a court cannot enter an interlocutory or final injunction against a party unless it has jurisdiction over that party, and mere notice will not be sufficient to obtain jurisdiction over a defendant" (footnote omitted)); 11 C. Wright & A. Miller, *Federal Practice and Procedure* § 2956, at 555 (1973) ("court ordinarily does not have power to issue an order against a person who is not a party and over whom it has not acquired in personam jurisdiction").

Further, "[a] prima facie showing of jurisdiction will not suffice ... where a plaintiff seeks preliminary injunctive relief. A court must have in personam jurisdiction over a party before it can validly enter even an interlocutory injunction against him." *Visual Sciences, Inc. v. Integrated Communications, Inc.*, 660 F.2d at 59.

In its August 1988 Jurisdiction Order, the district court found only that Weitzman had made a prima facie showing of personal jurisdiction. The court stated that when it heard the merits of the § 5225 motion it would also "conduct a full evidentiary hearing on the subject of jurisdiction." There was no such hearing prior to the entry of the injunction. The prima facie showing was sufficient to permit the § 5225 issues to be litigated, but it was not sufficient to permit the entry of a preliminary injunction.

Accordingly, on remand, the district court may not enter an injunctive order against Beverly without determining that Weitzman has established at least a reasonable probability of ultimate success on the question of the court's in personam jurisdiction over Beverly.

### CONCLUSION

We have considered all of Weitzman's arguments on this appeal in support of the freeze order and have found them to be without merit. The July 24, 1989 Injunction is vacated, and the matter is remanded for further proceedings not inconsistent with this opinion.

Costs to appellant.