Robert D. PINCKNEY, Plaintiff,

v.

The BOARD OF EDUCATION OF THE WESTBURY UNION FREE SCHOOL DISTRICT, and Joseph N. Pascarella, Arthur Outram, Henry Razzano, and Alfonso Sposito, individually and as Trustees of the Board of Education of the Westbury Union Free School District, Defendants.

No. 96 CV 0952 (ADS).

United States District Court,
E.D. New York.

April 1, 1996.

Ingerman, Smith, Greenberg, Gross Richmond, Heidelberger, Reich and Scricca, L.L.P, Northport, New York by Warren H. Richmond, for Plaintiff.

Rivkin, Radler & Kremer, Uniondale, New York by Peter C. Contino, Mastroianni & Mastroianni, Westbury, New York by Anthony Mastroianni, for Defendants.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge:

This lawsuit arises out of the claims of the plaintiff, Robert Pinckney ("Pinckney" or the "plaintiff"), the Superintendent of Schools of the Westbury Union Free School District, against the defendants, the Board of Education of the Westbury Union Free School District (the "School Board"), and four School Board trustees, Joseph N. Pascarella ("Pascarella"), Arthur Outram ("Outram"), Henry Razzano ("Razzano") and Alfonso Sposito ("Sposito" collectively the "Board Trustees"). The plaintiff contends that his constitutional due process rights were violat-

ed as a result of his being suspended without pay pending a determination regarding disciplinary charges brought against him for incompetence, insubordination, misconduct and neglect of duties. The plaintiff filed this motion for a preliminary injunction by order to show cause pursuant to Fed.R.Civ.P. 65 seeking to reinstate his salary and benefits until a decision on the merits of the pending disciplinary charges is reached.

### I. *Background*

The plaintiff, is a resident of Suffolk County, New York. The School Board is a municipal corporation established pursuant to New York Education Law. Pascarella, Outram, Razzano and Sposito are duly elected trustees of the School Board. Pinckney was hired by the School Board as the Superintendent of Schools of the Westbury Union Free School District on August 1, 1993.

In July 1994 the plaintiff and the School Board entered into an employment agreement for the period from July 1, 1994 to June 30, 1996. On October 18, 1995, Pinckney and the School Board extended the Contract through June 30, 1997. This extension provided that the terms of the original contract would be "continued without change" (the original contract and the extension are collectively referred to as "the Contract").

Included in the Contract are terms governing discharge for cause. Specifically, the Contract provides that:

During the ... term of this contract, the Board may discharge Dr. Pinckney upon any of the following grounds:

1. Insubordination

2. Incompetency

3. Misconduct

4. Neglect in the performance of his duties as Superintendent of the Westbury Schools.

Said discharge shall be effected upon written charges to be served upon Dr. Pinckney, and only after a hearing upon notice before a Hearing Officer appointed by the Commissioner of Education. Said Hearing Officer shall serve to hear the charges and determine the findings of facts before him,

and make a recommendation to the Board for the imposition of a penalty or discharge.

Said Hearing Officer shall refer his findings of fact and recommendation to the Board. The Board may impose such penalty or discharge Dr. Pinckney from employment as it shall deem fit under the circumstances.

The Contract does not contain any provisions regarding suspension without pay pending a hearing on any written charges brought against the plaintiff.

On January 17, 1996, the School Board met in an executive session. According to the plaintiff, during this meeting, and without notice to him, Outram distributed a resolution preferring disciplinary charges against Pinckney, suspending him without pay pending a hearing. After a short discussion of the matter, the Board reconvened in public session where the resolution was adopted without discussion by a vote of four to three. The plaintiff alleges that he was not given an opportunity to respond to the charges or speak on his own behalf prior to the adoption of the resolution. The resolution further offered the plaintiff the sum of $50,000 in addition to his accumulated leave time if he would agree to file a letter of resignation with the Board no later than 5:00 p.m. on January 18, 1996. Pinckney refused the offer.

On January 19, 1996, the plaintiff was served with written notice of the charges pending against him. By Notice dated January 26, 1996, Pinckney appealed the Board's action to the New York State Commissioner of Education and sought a stay of his suspension without pay pending resolution of the disciplinary charges. On February 12, 1996, the Commissioner issued a decision denying the stay. The plaintiff then moved for reconsideration. In both the appeal and application for reconsideration Pinckney contends that his suspension without pay violated his due process rights. The Commissioner has apparently not yet rendered a decision regarding the application for reconsideration of the stay or the appeal itself.

On March 5, 1995, the plaintiff filed his Complaint in this Court based on a section 1983 cause of action seeking compensatory and punitive damages and injunctive relief reinstating his salary and benefits. The plaintiff also moved, by order to show cause, for a preliminary injunction asking "to reinstate the salary and fringe benefits" of the plaintiff "pending a hearing on disciplinary charges preferred by the defendant Board." In support of his motion for a preliminary injunction the defendant claims that he has been deprived of his contractual and constitutional due process rights in violation of the Fourteenth Amendment. Further, he contends that the School Board's action has caused him irreparable harm in that it renders him unable to support his family and because he is prohibited from seeking alternative employment.

The defendants respond with two defenses. First, they assert that this Court should abstain from hearing this case under *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), based on the ongoing parallel state administrative proceeding. Second, even if the Court declines to abstain, the defendants contend that an injunction should not issue because the plaintiff has not suffered any irreparable harm and that the plaintiff's underlying constitutional claims are without merit.

## II. *Discussion*

### A. *Younger abstention*

Before addressing the merits of the plaintiff's motion for a preliminary injunction, the Court will address the defendants' abstention argument because abstention would obviate the need for further analysis. Specifically, the defendants seek to interpose the doctrine of *Younger* abstention in order to have this case dismissed.

■ *Younger* abstention applies to state administrative proceedings where: (1) there is an ongoing state quasi-judicial administrative proceeding, which (2) implicates an important state interest, and (3) there is an adequate opportunity to litigate federal claims either in the administrative proceeding or in a state court judicial review proceeding. *Christ the King Regional High*

*School v. Culvert,* 815 F.2d 219, 224 (2d Cir.), *cert. denied,* 484 U.S. 830, 108 S.Ct. 102, 98 L.Ed.2d 63 (1987); *see also CECOS Int'l, Inc. v. Jorling,* 895 F.2d 66, 70 (2d Cir.1990). The Second Circuit recently recognized the policy underlying *Younger* abstention in *Doe v. State of Connecticut, Dept. of Health Services,* 75 F.3d 81, 84 (2d Cir.1996),

> Under the *Younger* abstention doctrine, 'interests of comity and federalism counsel federal courts to abstain from jurisdiction whenever federal claims have been or could be presented in ongoing state judicial proceedings that concern important state interests.' *Hawaii Housing Authority v. Midkiff,* 467 U.S. 229, 237–38, 104 S.Ct. 2321, 2327–28, 81 L.Ed.2d 186 (1984). Abstention is warranted where [an ongoing] state judicial proceeding ... implicates important state interests, and affords an adequate opportunity to raise constitutional challenges. *Middlesex County Ethics Comm. v. Garden State Bar Ass'n,* 457 U.S. 423, 431, 102 S.Ct. 2515, 2520–21, 73 L.Ed.2d 116 (1982).

■ The doctrine derives from the recognition that interference by a federal court with a state proceeding "would entail an unseemly failure to give effect to the principle that state courts have the solemn responsibility, equally with the federal courts to guard, enforce, and protect every right granted or secured by the Constitution of the United States." *Temple of the Lost Sheep, Inc. v. Abrams,* 930 F.2d 178, 183 (2d Cir.), *cert. denied,* 502 U.S. 866, 112 S.Ct. 193, 116 L.Ed.2d 153 (1991), citing, *Steffel v. Thompson,* 415 U.S. 452, 461–62, 94 S.Ct. 1209, 1216–17, 39 L.Ed.2d 505 (1974).

■ Applying the three prong test set forth above, the Court finds that although *Younger* applies, the Court is required only to partially abstain from hearing the plaintiff's lawsuit. First, there is an ongoing state administrative proceeding which was pending at the time this lawsuit was filed. On January 17, 1996, the plaintiff was suspended without pay pending a hearing on the disciplinary charges levelled against him. Pinckney appealed the suspension and sought a stay from the Commissioner of Education. The stay was denied and the plaintiff filed an application for reconsideration. Both the appeal, and the application for reconsideration are still pending.

■ Second, the Court finds that the state has a sufficient state interest in managing education to warrant abstention. As the Second Circuit recently recognized, "the Supreme Court has indicated that the state has a 'compelling' interest in educating its youth...." *Immediato v. Rye Neck School Dist.,* 73 F.3d 454, 462 (2d Cir.1996) (addressing students' constitutional rights not to participate in mandatory community service). Indeed the district courts have already applied *Younger* abstention to cases relating to education. *See, e.g., Blackwelder v. Safnauer,* 689 F.Supp. 106, 114–18 (N.D.N.Y. 1988) (applying *Younger* abstention where plaintiffs claimed a constitutional right to educate children at home while there was a related state proceeding still pending). Consistent with these decisions, the Court finds that the state has a sufficient interest in managing education for *Younger* to apply in this case.

■ Third, the Court finds that the plaintiff can adequately raise his constitutional claims in the related state proceedings. As stated above, Pinckney is awaiting his disciplinary hearing and has an appeal pending before the Commissioner of Education. If he is dissatisfied with the results of the hearing or the Commissioner's determination, the plaintiff may seek judicial review in the state courts. *See* N.Y.Educ.Law § 310 (providing for Commissioner's review of the School Board's decision); *Gundrum v. Ambach,* 55 N.Y.2d 872, 448 N.Y.S.2d 466, 433 N.E.2d 531 (1982) (recognizing the right to judicial review of the Commissioner's determination). Under New York law, judicial review of the Commissioner's decision includes the jurisdiction to review constitutional claims in the state court. *See, e.g, Ward v. Nyquist,* 43 N.Y.2d 57, 400 N.Y.S.2d 757, 371 N.E.2d 477 (1977) (recognizing that the "arbitrary and capricious" standard of review is applied to decisions of the Commissioner of Education); *Strippoli v. Bickal,* 21 A.D.2d 365, 250 N.Y.S.2d 969 (4th Dep't 1964), *aff'd,* 16 N.Y.2d 652, 261 N.Y.S.2d 84, 209 N.E.2d

123 (1965) (article 78 proceedings relating to education may include constitutional claims). Accordingly, the Court finds that the plaintiff may adequately raise his constitutional claims in the state court proceeding and the doctrine of *Younger* abstention is properly invoked.

■ As a final matter, the Court finds that no exception to the *Younger* doctrine applies. The courts recognize an exception to *Younger* where the state court proceeding is brought in bad faith. *See Younger*, 401 U.S. at 54, 91 S.Ct. at 755. While the Court had serious concerns regarding the immediacy of the hearing, the parties stipulated at oral argument that the hearing would be commenced within the next thirty days. Accordingly, the Court cannot say that the state administrative hearing was either initiated or conducted in bad faith. Accordingly, the exception to *Younger* is inapplicable.

■ However, having found the *Younger* doctrine applicable does not end the inquiry. As the Court noted above, the plaintiff seeks both monetary and equitable relief. Where the plaintiff seeks damages not otherwise available in the state proceeding along with an injunction, the proper remedy is not to dismiss the case, but rather to stay the federal court case pending the outcome of the related state proceedings. *Thomas v. New York City*, 814 F.Supp. 1139, 1150 (E.D.N.Y.1993) (finding that "applying abstention principles in [that] case require[d] a stay of the federal action rather than a dismissal") (citations omitted). In this case, the plaintiff seeks compensatory and punitive damages along with an injunction. New York Civil Practice Law and Rules § 7806 provides for money damages in cases reviewing a state agency's decision only to the extent that such damages are incidental to the primary relief sought. N.Y.Civ.Prac.L. & R. § 7806. As a result, to the extent that the plaintiff seeks compensatory and punitive damages which are not incidental to the relief he seeks, these damages are not available in the state court proceeding. Accordingly, to the extent that *Younger* abstention applies to this case, the plaintiff's claims for money damages are stayed until the state proceeding has concluded in its entirety, rather than being dismissed.

■ Having determined that *Younger* abstention applies and that the claims for money damages will be stayed, the Court now turns to the plaintiff's request for injunctive relief which presents a slightly different problem. In the typical *Younger* case, the plaintiff seeks to enjoin the state proceeding entirely based on an alleged violation of constitutional or statutory rights. *See, e.g., Doe*, 75 F.3d 81 (plaintiff sought to enjoin state disciplinary proceedings). In this case however, the plaintiff is not seeking to enjoin the state proceeding. Rather, he is attempting to lift his suspension without pay pending the outcome of the hearing. In recognizing this distinction, the Court of Appeals for the Seventh Circuit in *Bethune Plaza, Inc. v. Lumpkin*, 863 F.2d 525, 529 (7th Cir.1988) (Easterbrook, J.), held that:

> An injunction that requires the hearing to precede the penalty does not prevent the state from litigating the merits in its own tribunal. It does not preempt even a fraction of the state tribunal's power, for a penalty that occurs before the state's tribunal has been convened is not one within that tribunal's power to prevent.... [While it true that t]he tribunal could reverse the action [at issue, it could] not undo that to which [the plaintiff] object[s]: the *sequence*. [The plaintiff's] situation is identical to that of the defendants in *Gerstein v. Pugh*, 420 U.S. 103, 108 n. 9, 95 S.Ct. 854, 860 n. 9, 43 L.Ed.2d 54 (1975), in which the [Supreme] Court held *Younger* inapplicable to a challenge to the duration of pretrial detention. The criminal trial would not be a useful forum for a defendant who was claiming the right to pretrial release.

*Id.* (emphasis in original).

The Court finds the reasoning of *Bethune* persuasive. Pinckney does not seek equitable relief based on his objection to the state administrative quasi judicial process as violative of his constitutional rights. Rather, he contests his prehearing suspension without pay. Even if he appears at the disciplinary hearing and is awarded back pay, that remedy will not right his "claim that the penalty

could not constitutionally precede the hearing." *Id.* Accordingly, the Court declines to abstain from the limited portion of this case seeking to enjoin the defendants from suspending the plaintiff without pay prior to the disciplinary hearing.

B. *The preliminary injunction*

1. *The standard for a preliminary injunction*

▮▮▮ The plaintiff seeks a preliminary injunction reinstating his salary and benefits "pending a hearing on the disciplinary charges." A preliminary injunction is considered an "extraordinary remedy that should not be granted as a routine matter." *JSG Trading Corp. v. Tray–Wrap, Inc.*, 917 F.2d 75, 80 (2d Cir.1990); *see also Patton v. Dole*, 806 F.2d 24, 28 (2d Cir.1986); *Medical Soc'y of N.Y. v. Toia*, 560 F.2d 535, 538 (2d Cir. 1977). In *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir.1979) (per curiam), the Second Circuit set forth the applicable standard in this Circuit in order to obtain preliminary injunctive relief. According to *Jackson Dairy*, the movant must clearly establish the following:

> (a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief.

*Id.; see also Able v. United States*, 44 F.3d 128, 130 (2d Cir.1995); *Alan Skop, Inc. v. Benjamin Moore, Inc.*, 909 F.2d 59, 60 (2d Cir.1990) (per curiam); *Tucker Anthony Realty Corp. v. Schlesinger*, 888 F.2d 969, 972 (2d Cir.1989). Where the injunction at issue will either alter, rather than maintain the status quo, or provide the movant with substantially all the relief sought, and that relief cannot be undone at trial, the injunction will be characterized as "mandatory" rather than "prohibitory." *Tom Doherty Assocs., Inc. v. Saban Entertainment, Inc.*, 60 F.3d 27, 33–34 (2d Cir.1995). If the injunction is "mandatory, the movant must make a "clear" or "substantial" showing of a "likelihood of success" on the merits as opposed to a mere "likelihood." *Id.*

▮▮▮ A showing of irreparable harm is perhaps considered the single most important requirement in satisfying the standard. *See Reuters Ltd. v. United Press Int'l, Inc.*, 903 F.2d 904, 907 (2d Cir.1990) (recognizing that "irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction"). Essential to a showing of irreparable harm is the unavailability or at least inadequacy of a money damages award. *See, e.g., Weinberger v. Romero–Barcelo*, 456 U.S. 305, 312, 102 S.Ct. 1798, 1803, 72 L.Ed.2d 91 (1982) ("The Court has repeatedly held that the basis for injunctive relief in the federal courts has always been irreparable injury and the inadequacy of legal remedies"). Also, the applicant must establish more than a mere "possibility" of irreparable harm. Rather, it must show that irreparable harm is "likely" to occur. *See JSG Trading Corp.*, 917 F.2d at 79.

Finally, Fed.R.Civ.P. 52(a) requires that the district court sufficiently set forth its findings to permit appellate review. *See Society for Good Will to Retarded Children, Inc. v. Cuomo*, 902 F.2d 1085, 1088 (2d Cir. 1990); *Weitzman v. Stein*, 897 F.2d 653, 658 (2d Cir.1990). The Court will address each of these requirements in turn.

2. *Irreparable harm*

The plaintiff contends that if he is denied injunctive relief, he will suffer irreparable harm based on two separate arguments. First, he contends that where deprivation of a constitutional right is alleged, "no further showing of irreparable harm is required." Second, even if he had not alleged a constitutional violation, the plaintiff's extraordinary family circumstances warrant equitable relief. Pinckney bases his extraordinary family circumstances argument on the fact that he is his family's "primary breadwinner" presently supporting two sons, both in college, and because he remains subject to his employment contract which prohibits him from seeking employment elsewhere.

a. *Constitutional violations*

▮▮ The plaintiff's first argument is that where a constitutional violation is alleged, no

other showing of irreparable injury is needed.

In *Mitchell v. Cuomo*, 748 F.2d 804, 806 (2d Cir.1984), the Second Circuit, reviewing a preliminary injunction based on an eighth amendment claim rooted in prison overcrowding, recognized that "[w]hen an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." In *Jolly v. Coughlin*, 76 F.3d 468, 482 (2d Cir.1996), another case addressing prisoners' rights, the Court expanded on this general proposition, recognizing a "presumption of irreparable injury that flows from a violation of constitutional rights." In support of this presumption, the Court noted that "it is the alleged violation of a constitutional right that triggers a finding of irreparable harm." *Id.*, citing, *Covino v. Patrissi*, 967 F.2d 73, 77 (2d Cir.1992); *Mitchell, supra*. Moreover, at least one district court in this circuit has characterized an alleged deprivation of constitutional rights as a "per se irreparable harm." *Scelsa v. City Univ. of New York*, 806 F.Supp. 1126, 1135, 1146 (S.D.N.Y.1992) (granting a preliminary injunction barring employment discrimination against Italian Americans).

While the Court appreciates the strength of the language cited above, particularly in the recent *Jolly* decision, the Court is also mindful of the fact that the constitutional right at issue in this case is one for procedural due process rather than a substantive right. And while the decisions discussed above seem to apply a blanket rule regarding irreparable harm where substantive constitutional rights are concerned, other courts have found that the mere allegation of a constitutional infringement in and of itself does not constitute irreparable harm. Rather, district courts must consider the nature of the constitutional injury before making such a conclusion. *See Hohe v. Casey*, 868 F.2d 69, 72–73 (3d Cir.), *cert. denied*, 493 U.S. 848, 110 S.Ct. 144, 107 L.Ed.2d 102 (1989) (recognizing that not all constitutional harms are synonymous with irreparable harm, and that the mere assertion of a First Amendment right does not automatically require a finding of irreparable harm; rather, the movant must show a "chilling" effect on protected activity); *International Dairy Foods Ass'n v. Amestoy*, 898 F.Supp. 246, 250–51 (D.Vt.1995) (same); *New Alliance Party v. Dinkins*, 743 F.Supp. 1055, 1063 (S.D.N.Y.1990) (same); *see also Public Serv. Co. of N.H. v. Town of W. Newbury*, 835 F.2d 380, 382 (1st Cir.1987) (recognizing that not all allegations of constitutional violations are sufficiently important to be irremediable by subsequent relief).

Applying these standards, the Court declines to find that the constitutional infringement alleged here constitutes irreparable harm. While the Court recognizes the weight of Second Circuit authority stating otherwise, each of the cases cited above is distinguishable by one overarching trait, the movant could not be made whole with money damages.

For example, in *Jolly*, 76 F.3d at 479–80, the plaintiff sought equitable relief based on the Eighth Amendment because he was incarcerated in a "medical keeplock" around the clock with the exception of a ten minute shower once each week because he refused to submit to tuberculosis test. In *Covino*, 967 F.2d at 75, a prisoner sought a preliminary injunction barring visual body cavity searches as violative of his Fourth Amendment right to protection from unreasonable searches and seizures. In *Mitchell*, 748 F.2d at 805–06, the movant sought an injunction to keep a prison open to avoid overcrowding elsewhere which would result in a violation of the plaintiffs' Eighth Amendment rights. In each of these cases, money damages would not have made the plaintiffs whole.

By contrast, this lawsuit is, at its core, a single plaintiff's claim for money damages. The plaintiff contends that he is entitled to his salary and benefits until a hearing is held regarding the merits of the pending disciplinary charges. If Pinckney prevails in the state proceeding on the merits, he may be awarded his back pay and the value of any lost benefits. In addition, this Court has not abstained with regard to any claims for monetary damages including any punitive damages he may have suffered. Accordingly, the Court finds that the plaintiff has not sufficiently established irreparable harm by virtue of this lawsuit which is based on an

alleged deprivation of constitutional procedural due process rights.

### b. *Extraordinary circumstances*

■ The plaintiff argues in the alternative that he has suffered irreparable harm based on his extraordinary family circumstances. In support of his position, Pinckney contends that he is his family's "primary breadwinner" responsible for supporting his two sons in college and that he is prohibited from seeking alternative employment as a result of his suspension. The Court disagrees.

■ Absent extraordinary circumstances, irreparable harm is not established by loss of income or the inability to find other employment. *See Holt v. Continental Group, Inc.*, 708 F.2d 87, 90–91 (2d Cir.1983), *cert. denied*, 465 U.S. 1030, 104 S.Ct. 1294, 79 L.Ed.2d 695 (1984). Extraordinary circumstances can only be established by a clear demonstration that the plaintiff (1) has little chance of securing future employment; (2) has no personal or family resources; (3) has no private unemployment insurance; (4) is unable to finance a loan privately; (5) is ineligible for public assistance; and (6) there are no other compelling circumstances weighing heavily in favor of interim relief. *See Williams v. State Univ. of N.Y.*, 635 F.Supp. 1243, 1248 (E.D.N.Y.1986). "In essence, the plaintiff must quite literally find [himself] being forced into the streets or facing the spectre of bankruptcy before a court can enter a finding of irreparable harm." *Id.* at 1248.

Applying these standards, the Court finds that the plaintiff has not established extraordinary circumstances. Although he contends that he is precluded from seeking other employment while under the terms of his employment contract, the Court finds that his suspension, which is not expressly covered by the terms of the Contract, would obviate any such a restriction. In addition, while the plaintiff contends that his unemployment would put a financial strain on his family resources, he does not argue that he is on the verge of bankruptcy or that he is "being forced out into the street." Accordingly, the Court concludes that Pinckney has failed to

establish the requisite extraordinary circumstances required to support a claim of irreparable harm.

The cases cited by the plaintiff in his memoranda of law do not alter this conclusion as they are all distinguishable. For example, in *Jessen v. Village of Lyndon Station*, 519 F.Supp. 1183, 1189 (W.D.Wis.1981), the plaintiff was facing termination, rather than a suspension with a termination hearing pending. In that case, the court noted that "without preliminary relief, plaintiff will be terminated immediately ... without the procedural protections mandated by the Fourteenth Amendment...." *Id.* at 1189. However, in this case, Pinckney will be given a hearing regarding his suspension and termination within the next thirty days. In addition, the *Jessen* court recognized that when the injunctive relief sought is to maintain the status quo, unlike the injunction sought by Pinckney, the standard for such relief is lower. *Id.*

In *Payne v. Housing Auth. of the City of Evansville*, 821 F.Supp. 559, 560 (S.D.Ind. 1992), and *Hilf v. New York City Housing Auth.*, 550 F.Supp. 1000 (S.D.N.Y.1982), the plaintiffs were "suspended indefinitely" without a hearing. In *Hilf* the plaintiff was informed that formal disciplinary charges would be served "in due course." *Hilf*, 550 F.Supp. at 1001. In this case, the plaintiff was suspended without pay pending a hearing and formal charges were served on him within days of his suspension. In addition, although three months have elapsed since the charges were served, and no hearing has taken place, there is no evidence that the defendants are solely at fault for the delay.

In *Rubino v. City of Mount Vernon*, 563 F.Supp. 907, 909 (S.D.N.Y.1982), the defendant refused to abide by a state adjudicatory board order directing reinstatement of the plaintiff following an article 78 proceeding refusing to set the order aside. While the plaintiff correctly quotes the decision, which found irreparable harm "given the uniqueness of the post [of a city assessor], the publicity given the dispute [his termination], the limited term of the employment, and the element of public trust that is involved," *Ru-*

*bino,* 563 F.Supp. at 909, the facts underlying this decision demonstrate that since the plaintiff had exhausted his state court options, his only recourse was injunctive relief in federal court. As discussed above, Pinckney, unlike the plaintiff in *Rubino* will not be irreparably harmed because he may still obtain the relief he seeks in the state proceedings and because this Court has not abstained with respect to any claim for monetary relief.

### 3. *Likelihood of success*

The second step of the inquiry requires that the movant demonstrate a likelihood of success on the merits. However, before engaging in this analysis, the Court would ordinarily be required to determine whether the plaintiff is required to make an ordinary showing of likelihood of success, or meet the more stringent standard of "substantial" likelihood of success required when the movant seeks a mandatory injunction.

However, the Court need not undertake such an analysis. As stated above, the plaintiff is unable to establish irreparable harm. Accordingly, he is not entitled to equitable relief no matter how likely his chances of success on the merits and his motion for a preliminary injunction is denied.

### III. *Conclusion*

After reviewing the parties' submissions, and hearing oral argument, and for the reasons set forth above, it is hereby

ORDERED, that the plaintiff's motion for a preliminary injunction pursuant to Fed. R.Civ.P. 65 is denied; it is further

ORDERED, that a hearing officer be selected and that the hearing begin within thirty days from March 22, 1996; and it is further

ORDERED, that this case is stayed pursuant to the doctrine of *Younger* abstention until the related state proceedings have concluded or it becomes necessary for this Court to act in the event that a hearing has not commenced within thirty days from March 22, 1996.

SO ORDERED.