■ In the Matter of NON-EMERGENCY TRANSPORTERS OF NEW YORK, INC., et al., Respondents, v MARVA L. HAMMONS, as Social Services Commissioner of the City of New York, et al., Appellants. [672 NYS2d 16] —Order, Supreme Court, New York County (Salvador Collazo, J.), entered December 11, 1996, which, in this CPLR article 78 proceeding, granted petitioners' application for a preliminary injunction enjoining respondents, pending a hearing, from implementing a new Medicaid transportation plan, and which granted petitioner Serrano's motion for class certification, unanimously reversed, on the law, without costs, the preliminary injunction and class certification are vacated, and the petition dismissed.

The individual petitioners, with one exception, are providers of non-emergency ambulette services to Medicaid-eligible persons in New York City. Petitioner Non-Emergency Transporters of New York, Inc. is one of the trade associations that represent the individual ambulette companies. In this article 78 proceeding, petitioners seek to enjoin respondents New York City Human Resources Administration (HRA) and the New York State Department of Social Services (DSS) from implementing a new medical transportation plan that would reduce

the reimbursement rates for ambulette service providers, and require a "group riding" method of transportation. Additionally, petitioner Efrain Serrano (Serrano), a disabled Medicaid patient who utilizes ambulette services, seeks class certification on behalf of himself and others similarly situated.

Pursuant to the State's obligation to implement the Federal Medicaid program (42 USC § 1396 *et seq.*), Social Services Law § 365-a (2) (j) imposes a statutory obligation on DSS to provide "transportation when essential and appropriate to obtain medical care, services and supplies * * * upon prior authorization, except when required in order to obtain emergency care, and when not otherwise available to the recipient free of charge." This statutory directive is implemented at the local level by DSS regulations, which state that every local social services agency, HRA in the instant case, must "prepare and submit for [DSS] approval a medical transportation plan which provides for essential transportation of [Medicaid] recipients to and from medical care and services * * * and the rate schedules to be used" (18 NYCRR 505.10 [e] [1]).

In June 1995, the Legislature enacted Social Services Law § 365-h, which was specifically directed at reimbursement for transportation costs. The goal of achieving a cost-effective medical transportation plan is clearly reflected in this section. Subdivision (1) emphasizes that the provision of transportation is limited to "those recipients and circumstances where such transportation is essential, medically necessary and appropriate," and that prior authorization is required. Subdivision (2) (a) requires that the local social services agency "make appropriate and economical use of transportation resources available," such as public transportation, other transportation available to the general public free-of-charge and group rides. These concerns are likewise addressed in the DSS regulations (18 NYCRR 505.10 [a], [d] [1], [3]).

In November 1994, HRA proposed a new medical transportation plan to DSS, which altered the rates for ambulette service providers. The new plan authorized reimbursement in the amount of $11.50 for one-way transportation of ambulatory patients within a five-mile area of their home, $15 for one-way transportation for non-ambulatory patients and $30 for one-way transportation outside the five-mile radius in certain special circumstances. The former flat rate of $23.50 for all one-way ambulette trips would be discontinued in favor of a "group ride model" at the new rates. The record discloses that the impetus for HRA's proposal was its discovery that group riding was already a common feature of the ambulette

transportation system. Field inspections and verbal inquiries by HRA investigators, and a study conducted by DSS, revealed that most ambulette trips transported more than one rider. It was HRA's position that the $23.50 flat rate was premised on a single-passenger ride, with the passenger receiving individual assistance. HRA concluded that such rate is not appropriate where the provider was billing for multiple riders on the same trip.

Prior to DSS approval of the new plan on May 10, 1996, HRA and DSS met with members of the ambulette industry on several occasions to discuss the proposed new rates and industry concerns. Included in these meetings were the New York State Medical Transporters Association, the largest trade organization of ambulette service providers, and the Greater New York Hospital Association Medicaid Transportation Workgroup. As a result of these meetings, HRA made revisions in the plan, including the $30 rate for transportation outside the five-mile radius, and a reimbursement rate of $11.50 for an escort should one be needed to assist the patient. After approval of the plan, DSS sent notices to all transportation providers informing them of the new rates and procedures.

On May 31, 1996, the day before the new plan was to go into effect, petitioners moved by order to show cause for a temporary restraining order enjoining respondents from implementing the plan. The IAS Court signed the order, and respondents were first alerted to the restraining order on June 3, 1996, when the papers were served upon them. The underlying petition alleged that respondents failed to demonstrate that the new rates were adequate to ensure the availability of transportation services, failed to conduct a cost survey from the ambulette service providers, failed to provide written notice of the new plan, failed to conduct public hearings and failed to demonstrate that the plan would not have a disparate impact on minority recipients since the plan was only applicable in New York City.

On June 11, 1996, petitioner Serrano moved for class certification, seeking representative status for those similarly situated individuals whose medical providers were beyond the five-mile radius. Serrano's motion papers made conclusory allegations that the group-riding requirement would result in delays, thereby exacerbating the class members' medical conditions.

The IAS Court granted both the preliminary injunction and class certification. The court found that the new plan failed to meet the requirements of 18 NYCRR 505.10 (e), and did not

have a rational basis since it did not adequately consider the needs of the intended beneficiaries of the statute. The court implicitly concluded that the requirements for a preliminary injunction had been met. With respect to class certification, the court noted that the plaintiff class was clearly numerous and disadvantaged, and that the five-mile radius restriction and group-riding requirement constituted common questions of law. We reverse.

The drastic remedy of a preliminary injunction is appropriate only where the moving party has established a likelihood of success on the merits, irreparable injury in its absence of such relief and a balancing of the equities in its favor (CPLR 6301; *Doe v Axelrod*, 73 NY2d 748, 750; *Grant Co. v Srogi*, 52 NY2d 496; *East 13th St. Homesteaders' Coalition v Lower E. Side Coalition Hous. Dev.*, 230 AD2d 622, 622-623). Petitioners have established none of these requirements. The reduction in reimbursement rates does not constitute irreparable injury to the ambulette companies since any losses incurred would be compensable in money damages (*see, Betesh v Jemal*, 209 AD2d 568). Nor are the equities balanced in their favor.

Most significantly, the likelihood of success is remote (*see, Doe v Axelrod, supra,* at 750-751). Our review is limited to whether a rational basis existed for respondents' determinations (*Matter of New York State Socy. of Surgeons v Axelrod,* 77 NY2d 677, 685). An agency's interpretation of the statutes it administers should be upheld if not unreasonable or irrational (*Goodwin v Perales,* 88 NY2d 383, 392).

Under this standard, the IAS Court's conclusion that no rational basis existed for the new medical transportation plan was plain error. Contrary to the IAS Court's findings, DSS regulations do not require respondents to undertake cost surveys and hold public hearings before a new plan is approved (*see,* 18 NYCRR 505.10 [a]-[e]). However, the regulations do provide a general standard for plan approval: "[DSS] will approve a transportation plan if it finds that the plan satisfactorily demonstrates that appropriate modes of transportation are available to [Medicaid] recipients in the [local] district and that the rates of payment for transportation are adequate to ensure the availability of transportation to and from medically necessary care and services which can be paid for under the [Medicaid] program" (18 NYCRR 505.10 [e] [1]).

The record establishes that respondents considered the effect of their new plan on Medicaid recipients, solicited industry concerns and determined that group riding and the new rate structure were a more cost-efficient system, yet would still

provide adequate transportation to all those in need. As this conclusion was rationally based and not arbitrary, it must be upheld (*see, Kuppersmith v Dowling*, 246 AD2d 473; *see also, Matter of Long Is. Med. Transp. Assn. v Brandwein*, 174 AD2d 622, *lv denied* 78 NY2d 861). Petitioners' disparate impact claim is equally meritless, as it is based on the solitary assertion that the new plan will disproportionately affect minority Medicaid recipients because it is applicable only in New York City (*see, New York Urban League v State of New York*, 71 F3d 1031).

The class certification order was also erroneous. The IAS Court's decision does not disclose consideration of all of the requirements of CPLR 901 and 902, and apparently ignored the well-settled principle that class action relief is generally inappropriate when governmental operations are involved (*see, Matter of Martin v Lavine*, 39 NY2d 72, 75; *Matter of Kelly v Bane*, 192 AD2d 236, 245; *cf., Chalfin v Sabol*, 247 AD2d 309).

In light of the fact that the parties fully briefed the propriety of respondents' implementation of the new plan, and we have decided that issue in favor of respondents, we dismiss the petition in its entirety. Concur—Sullivan, J. P., Milonas, Mazzarelli and Andrias, JJ.