DORSETT–FELICELLI, INC., d/b/a Pyramids, and Pyramids Pre–School, Inc., Plaintiffs,

v.

COUNTY OF CLINTON, Paula Calkins Lacombe, Individually and in her official capacity as Director of the County of Clinton Department of Public Health, and Katherine O'Connor, Individually and in her official capacity as Early Intervention Official and PreSchool Related Service Coordinator, North Country Kids, Inc., Stephanie Girard, Kelly MC Cauley, and Melissa Puchalski, Defendants.

No. 104CV1141LEKRFT.

United States District Court, N.D. New York.

Nov. 16, 2004.

Meredith H. Savitt, Office of Meredith H. Savitt, Albany, NY, for Plaintiffs.

Christopher R. Lyons, Claudia A. Ryan, Ryan, Smallacombe Law Firm, Mario D. Cometti, Caplan, Caplan Law Firm, Albany, NY, for Defendants.

## MEMORANDUM DECISION AND ORDER [1]

KAHN, District Judge.

## I. BACKGROUND

Melissa Dorsett–Felicelli is the President and Executive Director of two corporations, Dorsett–Felicelli, Inc. d/b/a Pyramids (hereafter "Pyramids"), and Pyramids Pre–School, Inc. (hereafter "Pre–School") (collectively "Plaintiffs"). Plaintiffs bring this action pursuant to 42 U.S.C. § 1983, alleging that Defendants took retaliatory actions in violation of Dorsett–Felicelli's First Amendment rights. Dorsett–Felicelli now seeks a preliminary injunction prohibiting the County of Clinton, Paula Lacombe and Katherine O'Connor from transferring session hours away from Plaintiffs.

### (a) Facts

Pyramids is a corporation that provides individualized services, such as speech, nutritional, occupational and physical therapies, to children of ages birth through three, pursuant to the Early Intervention Program ("EIP") established by New York Public Health Law. *See* N.Y. PUB. HEALTH LAW §§ 2540—2559.[2] The approval of New York State's Department of Health is required to become an authorized provider

---

1. For printed publication in the Federal Reporter.

2. § 2559–b provides that the "commissioner may adopt regulations necessary to carry out the provisions of this title ...." Those promulgated regulations appear in the New York Codes, Rules and Regulations in Title 10, as will be cited below.

of these services. 10 NYCRR § 69–4.5. Once approval has been received, a municipal official refers children to the service providers. N.Y. PUB. HEALTH LAW § 2552; 10 NYCRR §§ 69–4.2, 4.3. As evidenced by its contract with the Clinton County Department of Public Health for the period January 12, 2004 through December 31, 2004, Pyramids is an authorized EIP service provider. EIP Contract (Dkt. No. 3, Ex. F). Pyramids receives the statutory fee of $70 for each therapy session provided. Dorsett–Felicelli Aff. (Dkt. No. 3) at ¶ 6.

Pre–School provides special education and related therapy services to children ages three through five who have learning disabilities, pursuant to the Preschool Special Education ("PSE") Program that has been established under New York State Education law. N.Y. EDUC. LAW § 4410. Approval of the Commissioner of the New York State Department of Education is required to become a service provider under this program. N.Y. EDUC. LAW § 4410(9). For participation in the PSE Program, children are referred to Pyramids through a school district's board of education. N.Y. EDUC. LAW § 4410(2). Pyramids has signed a contract with the Clinton County Public Health Department to offer PSE services from July 1, 2004 through June 30, 2005. PSE Services Contract (Dkt. No. 3, Ex. M).

Beginning in the Fall 2003, Dorsett–Felicelli began to voice her objection to what she perceived as the County's unlawful use of independent unlicensed contractors as service providers under these programs. Dorsett–Felicelli contends that the County designates certain providers as independent contractors to save money because this status avoids payment of certain state and federal employee taxes. Affording some providers this status therefore undercuts Pyramids' and the Pre–School's ability to compete and to retain and recruit qualified specialists.

In a meeting in September 2003, Dorsett–Felicelli complained to several County officials, County Administrator William Bingel, County Attorney Dennis Curtin, and Assistant County Administrator Michael Zurlo, about the County's use of independent contractors for work under these programs. In October 2003, Dorsett–Felicelli met with Zurlo, Curtin, and Defendant Katherine O'Connor, County Coordinator for EIP services, to reiterate her concerns. She contends that upon voicing her objection, Curtin threatened that she could encounter problems with the way that Pyramids does its billing. On December 10, 2003, Dorsett–Felicelli took her concerns to the Clinton County Legislature, but she claims that she only received "lip service." Dorsett–Felicelli Aff. (Dkt. No. 3) at ¶ 12.

Dorsett–Felicelli contends that the County was surreptitiously involved in encouraging three Pyramids' employees, Melissa Puchalski, Stephanie Girard and Kelly McCauley, to form North Country Kids, a competing agency which also provided EIP and PSE services. As evidence of this allegation, Dorsett–Felicelli points out that the County scrambled to have North Country Kids' provider status approved prior to Pyramids' termination of employment of these three employees because their employment with a licensed service provider, such as Pyramids, was necessary to allow transfer of session hours to North Country Kids. To expedite the North Country Kids' service provider approval, the County Legislature "took the unusual step of calling for a vote on the agreement by telephone rather than in chambers." Dorsett–Felicelli Aff. (Dkt. No. 3) at ¶ 14. Dorsett–Felicelli also points to the fact that North Country Kids was included on a February 4, 2004 list of

service providers compiled by the Clinton County Health Department, when its approval by the County legislature was not obtained until February 11. *Id.* at ¶¶ 15—16. State approval was never obtained.

In a memorandum dated February 12, 2004, the County Defendants notified Pyramids that effective February 16, 2004, the County defendants had elected to transfer EIP and PSE session hours away from Pyramids to North Country Kids. Clinton County Health Dep't. Memo (Dkt. No. 3, Ex. G). Dorsett–Felicelli contends that this represents a gross revenue of $207,480 annually. Dorsett–Felicelli Aff. (Dkt. No. 3) at ¶ 17.

Shortly after this transfer of session hours, an anonymous letter was sent to the Department of Education, alleging that Pyramids' services jeopardize the safety of the children. *Id.* at ¶ 18. The Department of Education, understandably concerned for the safety of the children, did an investigation and reported that there was no merit to these allegations and that Pyramids services were of "exemplary quality." Letter of Rusty Kindlon, State Dep't. of Ed. (Dkt. No. 3, Ex. I). Dorsett–Felicelli believes that the County defendants were involved in the sending of this letter. Dorsett–Felicelli Aff. (Dkt. No. 3) at ¶ 18. She hired a forensic linguist analyst who is of the opinion that Defendant O'Connor may have written the anonymous letter. *Id.* at ¶ 18. The County has refused requests to investigate the matter. *Id.*

On June 1, 2004, Dorsett–Felicelli, Inc., d/b/a Pyramids, filed an Article 78 proceeding in Supreme Court of the State of New York, County of Clinton, against defendants County of Clinton, County of Clinton Department of Public Health, Paula Lacombe in her official capacity as Director of the County of Clinton Department of Public Health, and Katherine O'Connor in her official capacity as Early Intervention Official and Pre–School Related Service Coordinator. That action seeks declaratory and injunctive relief and specifically "seeks to have the session hours reinstated on the ground that the respondents in that proceeding acted arbitrarily and capriciously with regards to Pyramids." *Id.* at ¶ 19.

Dorsett–Felicelli contends that in response to her filing that Article 78 proceeding, the County Defendants retaliated against Pyramids. In August 2003, the County defendants had made 546 EIP session referrals to Pyramids, a number consistent with previous months, but in June 2004, referrals dropped to 100. *Id.* at ¶ 20. Additionally, after the filing of the Article 78 proceeding, on September 1, 2004, the County Defendants transferred Special Education Itinerant Teacher ("SEIT") services for 11 students, a total of 30 sessions per week for 40 weeks, sessions that are part of the PSE Program, away from Pyramids.[3] *Id.* at ¶ 21. The transfer of SEIT sessions constitute a loss of about $76,800 of income to Pyramids.

---

**3.** The sessions were actually transferred to Teddy Bear Child Care, Inc. ("Teddy Bear"). The referral to Teddy Bear was made because North Country Kids could not receive approval as a PSE program and SEIT service provider, as the New York State Department of Education ruled that there was no unmet need in the County, thereby eliminating the need for another service provider. Therefore, the session hours were transferred to Teddy Bear, as Teddy Bear it is the only other PSE service provider in Clinton County. Teddy Bear in turn subcontracted the session hours to North Country Kids. Teddy Bear is not a party to this action because Pyramids admitted in the order to show cause hearing that it has no evidence of any illegal motive on Teddy Bear's part in taking the transferred session hours.

Since this Court held the hearing on the order to show cause, the Clinton County Supreme Court has issued a decision in the Article 78 proceeding on October 31, 2004. *Dorsett–Felicelli, Inc., d/b/a/ Pyramids v. County of Clinton, et al.*, No. 04–0547, slip op. (N.Y.Sup.Ct. Oct. 31, 2004). Justice McGill dismissed the case and held that petitioners, Dorsett–Felicelli and Pyramids, lacked standing because the statutes and regulations were not implemented to protect against the harm of which they complained, explaining that "petitioner[s] simply failed to make the 'critical showing' that [their] injury falls within the 'zone of interest' or either [the Public Health Law or Education Law]." *Id.* at 9.

## II. DISCUSSION

### (a) Younger abstention

■ The Supreme Court's ruling in *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), established that a federal court, although it properly has jurisdiction, in the interest of comity, should abstain from hearing a case that would interfere with an on-going state criminal proceeding. "[D]ismissal or a stay of claims is mandatory when the requirements for *Younger* abstention are satisfied . . . ." *Spargo v. N.Y. Comm'n on Judicial Conduct*, 351 F.3d 65, 74 (2d Cir. 2003) (noting also that "*Younger* is not a jurisdictional bar based on Article III requirements, but instead a prudential limitation on the court's exercise of jurisdiction grounded in equitable considerations of comity") (citing to *Diamond "D" Constr. Corp. v. McGowan*, 282 F.3d 191, 197 (2d Cir.2002)). "*Younger* generally prohibits courts from 'taking jurisdiction over federal constitutional claims that involve or call into question ongoing state proceedings' so as to avoid unnecessary friction." *Id.* at 75 (citing to *Diamond*, 282 F.3d at 198); *see also Cullen v. Fliegner*, 18 F.3d 96, 103

(2d Cir.1994) (*Younger* "is based on the premise that ordinarily a state proceeding provides an adequate forum for the vindication of federal constitutional rights . . . ."). Although *Younger* abstention was developed to prohibit a federal court's interference with an ongoing state criminal proceeding, it has since been extended to civil cases. *Huffman v. Pursue*, 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975); *see also Trainor v. Hernandez*, 431 U.S. 434, 97 S.Ct. 1911, 52 L.Ed.2d 486 (1977).

■ Abstention under *Younger* and its progeny follows a prescribed formula. A federal court must refrain from hearing a federal constitutional claim when (1) there is a pending state proceeding, (2) that implicates an important state interest, and (3) the state proceeding affords the federal plaintiff an adequate opportunity for federal judicial review of his federal constitutional claims. *Spargo*, 351 F.3d at 75. The Second Circuit, relying on the statements of the Supreme Court, has instructed that:

> "[U]nless state law clearly bars the interposition of the constitutional [or federal] claims," and "so long as there is no showing of bad faith, harassment, or some other extraordinary circumstance that would make abstention inappropriate, the federal courts should abstain." *Middlesex County Ethics Comm. v. Garden State Bar Ass'n.*, 457 U.S. 423, 432, 435, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982). *Younger* itself explained that exceptions to abstention should be made only on a "showing of bad faith, harassment, or . . . other unusual circumstance." *Younger*, 401 U.S. at 54, 91 S.Ct. 746.
>
> *Kirschner v. Klemons*, 225 F.3d 227, 233–34 (2d Cir.2000).

Additionally, if a court finds that abstention is proper, it may dismiss the case, or

otherwise, stay the proceedings pending a resolution of the state court action.

### (1) Ongoing state proceeding

 The interests of comity and federalism are only implicated if there is an ongoing state proceeding with which a federal court decision may interfere. Even though the Supreme Court has ruled on it, the Article 78 proceeding filed by Dorsett–Felicelli and Pyramids is an ongoing state proceeding.[4] The first requirement for abstention is met if that state proceeding would be impacted by the Court's resolution of the instant federal action such that the respect between our dual system of government would be offended.

Dorsett–Felicelli filed the Article 78 proceeding on June 1, 2004, premised upon her allegation that the arbitrary and capricious decision to transfer EIP hours violated New York's Department of Education regulations. Complaint (Dkt. No. 1) at ¶ 51. Although the Article 78 complaint in its entirety is not before this Court, it appears as though Dorsett–Felicelli's state action contends that the decision to transfer the hours was prompted by Dorsett–Felicelli's complaints to County officials that the County was using independent contractors in violation of the law. In that action she "seeks to have the session hours reinstated . . . ." Dorsett–Felicelli Aff. (Dkt. No. 3) at ¶ 19. She then filed the instant federal action, pursuant to 42 U.S.C. § 1983, alleging that in retaliation for her filing the Article 78 proceeding, and in violation of her First Amendment rights, the County has increased the number of transfers from Pyramids to North Country Kids.

It is clear that both actions are premised on the identical allegation that the County has retaliated against her. The state proceeding alleges that transfer of early intervention session hours is retaliation for the verbal complaints she made prior to filing of the state action, and seeks redress pursuant to New York Department of Education regulations which prohibit an arbitrary or capricious transfer of session hours. The instant federal proceeding alleges that the transfer of early intervention session hours is retaliation for her filing of the Article 78 state action, and seeks redress based upon the alleged constitutional violations. That both proceedings are based upon similar allegations is demonstrated by Plaintiffs' statement that they have "sought relief in state court and that has failed to deter defendants from continuing their retaliatory conduct." Plaintiffs' Mem. (Dkt. No. 8) at 5.

Both proceedings seek to have the EIP hours returned. Plaintiffs do not claim that the Article 78 proceeding is limited to a return of the EIP hours that were transferred prior to the filing of that proceeding. The state proceeding may yet determine that all of the transfers were made "arbitrarily and capriciously," including those that occurred after the filing of the state action. To the extent that she asks for the return of EIP hours, the first requirement for *Younger* abstention is met because a resolution of the constitutional claim would interfere with any fur-

---

4. Even though the Article 78 petition has been addressed and dismissed by the Supreme Court, there is still an on-going state proceeding. "[A] would-be plaintiff who has been subjected to a state proceeding which he seeks to challenge in federal court must first exhaust all available state appellate remedies . . . ." *Kirschner v. Klemons,* 225 F.3d at 234

(citing to *Huffman v. Pursue, Ltd.,* 420 U.S. 592, 608, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975)). The decision rendered by the Supreme Court was dated October 31, 2004. Petitioners have not exhausted their state court remedies because they may still pursue an appeal of that decision.

ther order or appeal that may be issued in resolving her on going Article 78 state proceeding. *See, e.g., Spearman v. Desert Hospital,* 210 F.3d 385, 2000 WL 60163 (9th Cir.2000) (affirming district court's dismissal of federal lawsuit based upon *Younger* principles where plaintiff filed both a state and federal action alleging claims of sexual discrimination based upon his sexual preference) (unpublished).

In the instant .federal action, Pre–School, the corporation that provides the SEIT services, seeks a return of SEIT session hours that were transferred to North Country Kids. The Article 78 proceeding does not appear to mention the SEIT transfer of hours,[5] and in fact, Pre–School was not a party to that action. Because all of the SEIT session hours were transferred after the filing of the state proceeding, Dorsett–Felicelli Aff. (Dkt. No. 3) ¶ 21, they are not at issue in the Article 78 proceeding. A decision from this Court with respect to the SEIT hours will not impact the ongoing state proceeding. Therefore, as this first prong of Younger is not met, the Court will not abstain from exercising its jurisdiction with respect to the part of the complaint which addresses the SEIT hours.

*(2) An important state or local interest*

■ As there is an ongoing state proceeding relating to the transfer of early intervention session hours, the Court must next determine whether the state has an important interest in hearing the constitutional claim before this Court. There can be little doubt that, because it is historically a power that is left to the states, there is an important state interest in regulating education:

> [T]he state has a sufficient state interest in managing education to warrant abstention. As the Second Circuit recently recognized, "the Supreme Court has indicated that the state has a 'compelling' interest in educating its youth. . . ." *Immediato v. Rye Neck School Dist.,* 73 F.3d 454, 464 (2d Cir.1996) (addressing students' constitutional rights not to participate in mandatory community service). Indeed the district courts have already applied *Younger* abstention to cases relating to education. *See, e.g., Blackwelder v. Safnauer,* 689 F.Supp. 106, 114–18 (N.D.N.Y.1988) (applying *Younger* abstention where plaintiffs claimed a constitutional right to educate children at home while there was a related state proceeding still pending)
>
> . . . .
>
> *Pinckney v. Bd. of Ed. of the Westbury Union Free Sch. Dist.,* 920 F.Supp. 393, 397 (E.D.N.Y.1996).

To the extent that the EIP is properly designated under the Public Health Law, the Court recognizes that the state also has an important interest in protecting the health of its youth. *See Medtronic, Inc. v. Lohr,* 518 U.S. 470, 475, 116 S.Ct. 2240, 135 L.Ed.2d 700 (1996) (noting that protection of health and safety is reserved to the states through their police powers). Because the EIP transfers at issue implicate the state's interest in overseeing the education and health regulations, there is clearly a state interest involved in resolving the instant action.

---

**5.** Plaintiffs state that the SEIT hours "are not at issue in the Article 78 proceeding because they were not transferred until *after* that action was filed." Plaintiffs' Reply Mem: (Dkt. No. 8) at 2. The County defendants explain that the "relief sought in the Article 78 pro- ceeding" relates to "the referrals or transfer of referrals of services under the County's Early Intervention Program." Therefore, both parties acknowledge that the Article 78 proceeding relates to the EIP hours and not the SEIT hours.

*(3) Whether the state action provides Plaintiffs an alternative avenue to address the constitutional claim*

Plaintiffs contend that the constitutional claim cannot be litigated in the state action because "Article 78 proceedings are not an appropriate vehicle for determining constitutionality of the government's action." Plaintiffs' Mem. (Dkt. No. 8) at 5. As support for this proposition, Plaintiffs rely on *Vezza v. Bauman,* 192 A.D.2d 712, 597 N.Y.S.2d 418 (2 Dep't 1993). In that case, the court held that an Article 78 proceeding was "not the proper vehicle to challenge the constitutionality of legislative *enactments*" and refused to allow petitioner to challenge the constitutionality of the zoning laws at issue on their face, but interpreted the petition as a declaratory judgment action and therefore reached the merits of the claims. *Id.* at 713, 597 N.Y.S.2d 418 (emphasis added).

 While an Article 78 proceeding is not the proper procedural mechanism to pursue when the petitioner seeks a declaration of a statute's constitutionality, it is the proper vehicle to challenge government action that deprives petitioner of his constitutional rights. In fact, the Court of Appeals long ago affirmed that "a proceeding under article 78 may be utilized to obtain review of a Board of Education's *action* when challenged upon constitutional grounds." *Strippoli v. Bickal,* 21 A.D.2d 365, 368–69, 250 N.Y.S.2d 969 (N.Y.App. Div.1964), *aff'd,* 16 N.Y.2d 652, 261 N.Y.S.2d 84, 209 N.E.2d 123 (1965) (holding that the Board of Education's transfer of students to reduce over-crowding in school while simultaneously racially integrating schools was not arbitrary and capricious) (emphasis added); *see also Cecos*

*Int'l, Inc. v. Jorling,* 895 F.2d 66, 71 (2d Cir.1990) ("[U]nder New York law[,] an Article 78 proceeding testing the results of an administrative adjudication is not the proper vehicle to challenge the constitutionality of a legislative enactment on its face .... Yet, the question of whether the statute has been *applied* in an unconstitutional fashion may be raised directly in an Article 78 proceeding ....") (emphasis in original) (internal citations omitted); *Van Patten v. City of Binghamton,* 137 F.Supp.2d 98, 102 (N.D.N.Y.2001) (McEvoy, J.) ("For example, an Article 78 proceeding ordinarily might challenge on due process grounds the manner in which a state agency afforded petitioner a hearing."). Therefore, it is clear that Dorsett–Felicelli may have raised her First Amendment claim in the Article 78 proceeding.

Plaintiffs contend that the present claims could not have been raised in the Article 78 proceeding because "it was the Article 78 proceeding itself that was the catalyst for a significant portion of the plaintiffs' constitutional claims." Plaintiffs' Mem. (Dkt. No. 8) at 4. However, as explained above, her Article 78 proceeding is in the nature of a retaliation claim for her voicing complaints regarding the County's administration of EIP services.[6] That initial proceeding itself related to her exercise of First Amendment rights. If retaliation is alleged in response to the filing of an action, any First Amendment claim may properly be raised in that first action. *See Dougherty v. Town of North Hempstead Bd. of Zoning Appeals,* 282 F.3d 83 (2d Cir.2002) (upholding dismissal of initial complaint alleging violation of substantive due process and equal protection claims related to zoning permit decision, but re-

---

**6.** Justice McGill characterizes the proceeding by explaining that "Pyramids alleges in its petition [that]the respondents have colluded with North Country Kids to take business

away from Pyramids in retaliation for it making complaints about the use of independent contractors."

manding to district court to allow plaintiff to amend his complaint to add a First Amendment retaliation claim which occurred after initial action was filed).

However, in an Article 78 proceeding, "money damages are only recoverable if they are incidental to the primary relief sought." *Kirschner,* 225 F.3d at 238 (citing to *Parker v. Blauvelt Volunteer Fire Co.,* 93 N.Y.2d 343, 690 N.Y.S.2d 478, 712 N.E.2d 647 (1999)). In the present case, Dorsett–Felicelli seeks compensatory damages in the amount that she would have been paid for the lost session hours, as well as punitive damages for the alleged violation of her constitutional rights. The monetary damages that would be paid for the lost session hours are no doubt incidental to her Article 78 proceeding in which the state court may find that those hours should be reinstated, and therefore it is proper for the Court to abstain from deciding whether she is entitled to that monetary relief. However, because the punitive damages she seeks for the infringement of her constitutional rights are not available in the Article 78 proceeding, the Court will not abstain from its jurisdiction to resolve those claims. *Kirschner,* 225 F.3d at 237–39. In light of the ongoing state proceeding, the Court will stay the federal action with respect to her punitive damage claim until a resolution of the Article 78 proceeding.

Finally, she now seeks a preliminary injunction prohibiting the further transfer of session hours. However, she could have requested this relief at the commencement of her Article 78 proceeding, but chose not to. The Court is unaware of any rule that would have precluded her from having sought that relief in the Article 78 proceeding. *See, e.g., Non–Emergency Transporters of N.Y. v. Hammons,* 249 A.D.2d 124, 672 N.Y.S.2d 16 (1998) (reviewing state Supreme Court's issuance of preliminary injunction in Article 78 proceeding). Although she did not initially seek that relief in her state action, the Court may still abstain. *See Kirschner,* 225 F.3d at 235 (". . . the question whether the state's procedural remedies *could* provide the relief sought does not turn on whether the state *will* provide the relief sought by the plaintiff before the federal court"). Although her action has already been commenced, Plaintiffs do not contend that they are prohibited from seeking a preliminary injunction in state court at this time.

### (4) No exception to Younger abstention exists

Even if the three factors for abstention are satisfied, *Younger* established a clear exception that federal abstention is not warranted if the state court proceeding is brought in bad faith. *Younger,* 401 U.S. at 54, 91 S.Ct. 746. The Second Circuit has explained:

In a companion case to Younger, the Supreme Court expanded on Younger's conception of bad faith, explaining that abstention may be inappropriate "in cases of proven harassment or prosecutions undertaken by state officials in bad faith without hope of obtaining a valid conviction . . . ." *Perez v. Ledesma,* 401 U.S. 82, 85, 91 S.Ct. 674, 27 L.Ed.2d 701 (1971). As the application of Younger abstention evolved beyond the criminal realm, the language of the bad faith exception became more generic. So, now, for a federal plaintiff to invoke the bad faith exception, "the party bringing the state action must have no reasonable expectation of obtaining a favorable outcome." *Cullen,* 18 F.3d at 103.

*Diamond D. Constr. Corp.,* 282 F.3d at 199.

Plaintiffs contend that this exception is applicable and ask that the Court

entertain the merits of this case because "the abstention doctrine contemplates an exception in cases where there is proven harassment or prosecutions undertaken by state officials in bad faith . . . ." Plaintiffs' Mem. (Dkt. No. 8) at 5. However, the state proceeding itself was initiated by Plaintiffs and the proceeding itself was not brought to harass, but rather to litigate the harassment alleged. Because Plaintiffs filed the state action, it cannot be said that it was initiated in bad faith or to harass them. Additionally, Plaintiffs would not claim that there is no expectation of obtaining a favorable outcome in the state court action. Therefore, application of this exception is not warranted.

The Court will entertain jurisdiction, or more accurately, the Court will not abstain from jurisdiction, over Plaintiffs' claims involving SEIT hours or her claim for punitive damages for transfer of EIP hours. In all other respects, the Court will abstain as required under *Younger*.

## (b) Preliminary injunction

### (1) Standard for issuing a preliminary injunction

■ "The general standard for issuing a preliminary injunction requires that the movant show '(a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief.'" *Maryland Cas. Co. v. Realty Advisory Bd. on Labor Relations*, 107 F.3d 979, 984 (2d. Cir.1997) (quoting *Int'l Dairy Foods Ass'n v. Amestoy*, 92 F.3d 67, 70 (2d Cir.1996) (quoting in turn *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir.1979))).

■ In some instances, the movant must "meet a higher standard where: (i) an injunction will alter, rather than maintain, the status quo, or (ii) an injunction will provide the movant with substantially all the relief sought and that relief cannot be undone even if the defendant prevails at a trial on the merits." *Tom Doherty Assocs., Inc. v. Saban Entertainment, Inc.*, 60 F.3d 27, 33–34 (2d Cir.1995). Additionally, "in situations where a plaintiff seeks a preliminary injunction against government action taken in furtherance of a regulatory or statutory scheme, which is presumed to be in the public interest[, . . . ] a plaintiff must meet [the] more rigorous likelihood-of-success standard." *Register.Com, Inc. v. Verio, Inc.*, 356 F.3d 393, 424 (2d Cir. 2004) (quotations and citations omitted).

■ "A decision to grant or deny a preliminary injunction is committed to the discretion of the district court." *Polymer Tech. Corp. v. Mimran*, 37 F.3d 74, 78 (2d Cir.1994) (citing *Coca–Cola Co. v. Tropicana Prods., Inc.*, 690 F.2d 312, 315 (2d Cir.1982)). The Second Circuit will "review the grant of a preliminary injunction for an abuse of discretion, and 'will reverse the district court only if it relied on clearly erroneous findings of fact, misapprehended the law, or erred in formulating the injunction.'" *Maryland Cas. Co.*, 107 F.3d at 984.

The Court will abstain from the claims that relate to the return of the early intervention session hours, such that the only injunctive relief that will be considered would maintain the status quo by prohibiting the future transfer of SEIT hours without ordering the return of hours already transferred. However, because it would also enjoin government action taken according to a statutory and regulatory scheme, Plaintiffs must meet the rigorous likelihood of success standard.

## (2) Irreparable Harm

Plaintiffs allege irreparable harm because Dorsett–Felicelli has been deprived of her First Amendment right of freedom of speech. To demonstrate irreparable harm, she contends that "a deprivation of a constitutional right is a sufficient basis in and of itself to find that the showing of irreparable harm has been met." Plaintiffs' Mem. (Dkt. No. 8) at 6. That general statement does not adequately reflect the law of this Circuit.

In affirming the district court's decision to issue a preliminary injunction, the Second Circuit has explained that "[a]lthough 'the loss of First Amendment Freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury,' we have not consistently presumed irreparable harm in cases involving allegations of the abridgement of First Amendment rights." Bronx Household of Faith v. Bd. of Educ. of the City of New York, 331 F.3d 342, 349 (2d Cir.2003) (quoting Elrod v. Burns, 427 U.S. 347, 373, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976); citing to Latino Officers Ass'n v. Safir, 170 F.3d 167, 171 (2d Cir.1999)). The distinction has been explained in this way: "Where a plaintiff alleges injury from a rule or regulation that directly limits speech, the irreparable nature of the harm may be presumed . . . . In contrast, in instances where a plaintiff alleges injury from a rule or regulation that may only potentially affect speech, the plaintiff must establish a causal link between the injunction sought and the alleged injury, that is, the plaintiff must demonstrate that the injunction will prevent the feared deprivation of free speech rights." Id. at 349–50, 96 S.Ct. 2673.

The present case does not present the former situation because the government action here, the transfer of session hours, does not directly limit speech. Rather, Plaintiffs must demonstrate a causal link between the transfer of session hours and the First Amendment violations. Plaintiffs also assert that irreparable harm is being caused because (1) the Pre–School's reputation is suffering, and (2) since the number of referrals has decreased it has become difficult to maintain and recruit staff due to the uncertain nature of future business. As Plaintiffs have not established a likelihood of success on the merits, the second prong of this analysis, the Court need not decide whether Plaintiffs have demonstrated irreparable harm.

## (3) Likelihood of success on the merits

 As explained above, the Court will abstain with respect to the early intervention session hours, such that the remaining claims involve only the transfer of SEIT hours. To prevail on their First Amendment retaliation claim brought pursuant to § 1983, Plaintiffs must demonstrate by a preponderance of the evidence that:

(1) [Plaintiff's] speech was constitutionally protected, (2) [Plaintiff] suffered an adverse employment decision, and (3) a causal connection exists between [Plaintiff's] speech and the adverse employment determination against him, so it can be said that his speech was a motivating factor in the determination. If a plaintiff establishes these three factors, the defendant has the opportunity to show by a preponderance of the evidence that it would have taken the same adverse employment action even in the absence of the protected conduct.

Gorman–Bakos v. Cornell Coop. Extension, 252 F.3d 545, 553 (2d Cir.2001) (citing Morris v. Lindau, 196 F.3d 102, 110 (2d Cir.1999)).[7]

---

7. This standard has been enunciated with respect to retaliation alleged by public employ-

The County provides several reasons why Plaintiffs are not likely to succeed on the action's merits. First, it contends that because it broke no law or regulation by using independent contractors, "plaintiff has failed to establish that the County was in any position based on plaintiff's First Amendment assertions to need or be motivated to retaliate in any way, shape or form."[8] County's Mem. (Dkt. No. TT) at 9. Second, it contends that the transfers were made in response to parents' requests pursuant to the statutes' and regulations' requirement that the County promote the children's best interests. Finally, the County contends that Plaintiffs cannot succeed on the retaliation claim against the County, because it is the Board of Education for the School District, and not the County, which authorizes an agency to provide SEIT services.

Plaintiffs present evidence that O'Connor had the requisite motive and intent to transfer those hours.[9] Even assuming that O'Connor may have had the motive or intent to retaliate and that the timing of the transfers is indicative of retaliation, because she did not have the statutory authority to effectuate the transfers, Plaintiffs have not established the causal connection that is required.

SEIT services are provided pursuant to New York Education Law and defined therein as "an approved program provided by a certified special education teacher on an itinerant basis in accordance with the regulations of the commissioner, *at a site determined by the board ....*" N.Y. Educ. Law § 4410(1)(k) (emphasis added). The statute explains the process for implementation of services. First, the statute requires a committee to determine what services are necessary. N.Y. Educ. Law § 4410(5)(a), (b). Based on that assessment, the committee then makes a written recommendation to the parents, the municipality, and the board as to what services should be provided. N.Y. Educ. Law § 4410(5)(b)(iii). Then, "[a]fter consideration of the recommendation of the committee and its statement of reasons, including any statement or statements of a parent setting forth an expressed preference, the board shall arrange for the provision of the recommended special services or programs ...." N.Y. Educ. Law § 4410(5)(c). It is clear that the board is empowered to disagree with the committee without authorizing any services:

If the board disagrees with the recommendation of the committee, it shall set

---

ees. The standard is the same in the present case because for purposes of First Amendment retaliation claims, "there is no legally relevant distinction between government employees and independent contractors." *Hous. Works v. Turner*, 179 F.Supp.2d 177, 195 (S.D.N.Y.2001) (citing to *Bd. of County Comm'rs.*, 518 U.S. 668, 684, 116 S.Ct. 2342, 135 L.Ed.2d 843 (1996)).

8. Although the Court will not discuss it at length, Plaintiff has a First Amendment right to voice her complaints as to the County's administrative operation of its programs, whether or not that criticism was founded on alleged legal violations. Therefore, she was engaging in protected speech. A retaliation claim may be alleged whether Dorsett–Feli-

celli was being retaliated against for complaints that were or were not founded on alleged legal violations, as her speech is protected.

9. For example, Dorsett–Felicelli presents evidence which demonstrates O'Connor's retaliatory intent, for example, the anonymous letter that Dorsett–Felicelli alleges was written by O'Connor, as discussed above. Dorsett–Felicelli Aff. (Dkt. No. 3) at ¶ 18. She also reiterates that the creation of North Country Kids was orchestrated by Defendant O'Connor to take session hours away from Pyramids, and that the hours were transferred to Teddy Bear only because North Country Kids could not receive approval from the Department of Education. *Id.* at ¶ 23, 25.

forth in writing a statement of its reasons and send the recommendation back to the committee, a notice of which shall be furnished to the preschool child's parent and the municipality in which the preschool child resides. In the event that a board refers the recommendation back to the committee for reconsideration, the board shall also notify the parent and the committee in writing of the need to schedule a meeting to ensure timely placement.

N.Y. EDUC. LAW § 4410(5)(d).

An appeal is permitted "[i]f the determination of the board is not acceptable to the parent ...." N.Y. EDUC. LAW § 4410(5)(7)(a).

All of these statutory provisions make clear that it is the board that renders the ultimate decision of what services are necessary. The statute defines "board" to mean "a board of education" or "trustees of a common school district." N.Y. EDUC. LAW § 4410(1)(c). The municipality is not included in the definition. *See id.* According to the statutory scheme, the municipality may be involved in the committee which makes the initial recommendation because "the chief executive officer of the municipality of the preschool child's residence shall appoint an appropriately certified or licensed professional to the committee." N.Y. EDUC. LAW § 4410(3)(1). The committee is limited to "conduct[ing] meetings to develop, review and revise the individualized education program of a preschool child with a disability." N.Y. EDUC. LAW § 4410(3).

■ Therefore, according to New York Education Law, although the County may

have a role on the committee that makes the recommendation, the final decision is reserved for the Board of Education. While the County has no role in the final determination of the scope of SEIT services provided, Plaintiffs claim that Katherine O'Connor controls the process and the Board of Education members defer to her. Absent evidence, though, a mere allegation that an individual who is not a board member controls the process, which contradicts the statute, cannot indicate the required causal connection between the First Amendment freedoms and the retaliatory action. Therefore, Plaintiff is not likely to succeed on the merits of her action because she does not dispute that the Board of Education, the entity entrusted to make the final assignment of SEIT services, is properly performing its duties.[10]

Additionally, the County has provided evidence that at least some of the transfers were made at the request of the parents. *See* Parent Request Memos, attached to the Affidavit of Christopher Lyons, Esq. The parents requested the transfers so that the same teachers, those who had moved from Pre–School to North Country Kids, would provide services. The County Defendants contend that these requests rely on the need for "consistency of therapy." Plaintiffs insist that "consistency of therapy" does not require the services of the same teacher, but only that the therapy services themselves be consistently provided to the children. Pursuant to the statute, parents are entitled to participate in formulating the committee recommendation and the final determination of the

---

**10.** This is especially true because an admission that the Board is adhering to the regulations without acting on any retaliatory motive indicates that they have been properly disagreeing with the committees recommendations when they are arbitrary and capricious.

While Dorsett–Felicelli contends that the there was no committee meeting held prior to effectuating those transfers, Dorsett–Felicelli Aff. (Dkt. No. 3) at ¶ 23, she provides no proof of the same.

 

Board for services provided to their children. N.Y. EDUC. LAW § 4410(3)(1)(i) (noting that the recommendation committee shall be composed of at least the parents and several other individuals); N.Y. EDUC. LAW § 4410(5)(c) ("After consideration of the recommendation of the committee and its statement of reasons, including any statement ... of a parent setting forth an expressed preference, the board shall arrange for the provision of the recommended special services or programs ...."). Whether or not there is a statutory provision allowing transfer for this reason, it is clear that the parents' requests for the transfers on their face do not indicate any retaliatory motive. The Board of Education was entitled to take those requests into consideration. Therefore, this alone provides evidence that the adverse action, namely the SEIT transfers, would have been pursued even in the absence of the protected conduct, thus precluding a finding that Plaintiffs are likely to succeed on the merits of the action.

## III. Conclusion

ORDERED, that the Court will stay federal action on the request for punitive relief for the First Amendment violations relating to the transfer of early intervention session hours, until a resolution of the Article 78 proceeding in state court; and it is further

ORDERED, that the Court will abstain from all other claims for declaratory or injunctive relief relating to the transfer of early intervention session hours; and it is further

ORDERED, that the preliminary injunction request with respect to the transfer of SEIT hours is **DENIED**; and it is further

ORDERED, that the Clerk serve a copy of this order on all parties.

IT IS SO ORDERED.